## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMIA

| | | |
|---|---|---|
| CAROLYN E. WILLIAMS, | ) | **Civil Action No 07***C***V901 (RBW)** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| SAMUEL BODMAN, | ) | |
| Secretary | ) | |
| U.S. Department of Energy, | ) | |
| | ) | |
| Stephen F. Durbin, | ) | |
| and | ) | |
| Andre Fordham | ) | |

### PLAINTIFFS MOTION NOT TO DISMISS

Plaintiff, a black American female, over the age of 45, withdraws her Motion for

Dismissal without Prejudice or an Enlargement of Time Stayed until January 4, 2008.

Plaintiff will respectfully file her opposition to the Defendant's Motion to Dismiss

on or before February 4, 2008, as so Ordered by the Court on November 30, 2007.

Plaintiff was a Training Program Specialist, at the U. S. Department of Energy, in

the Energy Information Administration for about twenty-six months; from March 2000,

to May 3, 2002, the date Mr. Stephen F. Durbin fired Plaintiff, with the aid of Mr. Andre

Fordham of Labor Relations.  Of the two years Plaintiff worked as a permanent employee

in the Energy Information Administration, six and one-half months of Plaintiff's tenure

included forced leave ordered by Mr. Durbin on April 26, 2001, to November 19, 2001.

Mr. Fordham was aware of Plaintiff's proposed suspension when around April 19, 2001,

he informed  Plaintiff " if you stopped filing so many EEO cases things may not be so

bad for you."  Saying further, "how are you going to pay your attorney when Steve, puts

you on the street."  Attending this meeting initiated by Mr. Durbin was Ms. Sandra

**RECEIVED**

JAN – 3 2008

1

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Vincent also of Labor Relations. When Mr. Durbin fired Plaintiff May 3, 2002, Plaintiff had 17 years of loyal Federal Service, including performance awards, including a performance award in Mr. Durbin's office. Mr. Fordham was deposed on July 12, 2002, in Rockville, Maryland, the transcript will be available for the Court. Mr. Durbin and Ms Hall had issues and were not deposed.

Plaintiff filed Title VII violations, including unwarranted harassment because of her sex, naming Mr. Durbin with the Office of Civil Rights and Diversity at the U. S. Department of Energy. Caucasian females were not treated in this manner by Mr. Durbin. The following Reports of Investigation were issued: 01(67) HQ/EIA; dated March 11, 2002, investigated while Plaintiff was on a Performance Improvement Plan. 02(31)HQ/EIA; dated August 15, 2003. 02(4745)HQ; dated December 12, 2003. On May 4, 2005, the Equal Employment Opportunity Commission (EEOC) Hearing Number 100a-2783x was held at the U. S. Department of Energy.

*See* Ray v. Henderson 217 F.3rd 1234 (9th Cir. 2000); Richardson v. New York State Dep't of Correctional Serv., 180 F. 3d 426, 446 (2nd Cir. 1999) [*26]. *See* Drake v. Minnesota Mining & Manufacturing Co., 134 F 3d 878, 887, (7th Cir. 1998); Gunnell v. Utah Valley State College, 152 F. 3d 1253, 1264 (10th Cir. 1998). Morrow v. Dep't of Army, 4 MSPB 443 (1080) and Pittman vs. MSPB, 832 F. 2d 598,599-600 (Fed Cir. 1997). Resulting from the EEOC Hearing, about a year later the EEOC ordered discipline for Mr. Durbin. The U. S. Department of Energy filed for Reconsideration to the EEOC. Plaintiff filed that the Decision be upheld. About a year later the EEOC's order to discipline Mr. Durbin remained. The U. S. Department of Energy's request for Reconsideration was denied. Plaintiff was given the right to file a Civil Action.

2

Plaintiff was subjected intentionally to disciplinary actions of personnel because of her protected EEO activity, retaliation, her race, age, sex, color and national origin. The threats to her federal career and harassment were perverse, and severe, affecting Plaintiff's health she was under the care of a cardiologist, resulting from an EKG, while being harassed at the U. S. Department of Energy on November 8, 2001.

Exhibits 1 through 5 are documents regarding Mr. Fordham's intentional actions to terminate Plaintiff's career based solely on inaccurate hearsay from Mr. Durbin and/or Ms. Hall. However, Plaintiff does believe that Mr. Fordham witnessed her being taken out of the U. S. Department of Energy, on April 26, 2001, on a stretcher, by paramedics near the second floor elevator, while exiting for the waiting ambulance.

January 3, 2008                    Respectfully Submitted,

*Carolyn E. Williams*

Carolyn E. Williams, pro se
8931 Town Center Circle
Unit 308
Upper Marlboro, MD 20774
301-499-2935

## EXHIBITS

Exhibit 1: copy of electronic mail from Mr. Fordham to Mr. Larry Klure dated December 6, 2001; 2 pages

Exhibit 2: copy of electronic mail from Plaintiff to Mr. Durbin dated January 8, 2001; 3 pages.

Exhibit 3: copy of electronic mail from Ms Hutzler to Mr. Klure, referencing Mr. Fordham's electronic mail of December 11, 2001; 3 pages.

Exhibit 4: copy of January 14, 2002 memorandum from Plaintiff's three agency representatives to Mr. Marmolejos Director, Office of Civil rights and Diversity; 1 page.

Exhibit 5: copy of memorandum from Plaintiff's three agency representatives to Mr. Marmolejos, dated February 14, 2002; 1 page.

Exhibit 6: copy of memorandum from Plaintiff's three agency representatives to Mr. Fordham dated February 14, 2002; 5 pages. Plaintiff does not have a copy of Mr. Fordham's letter to her three representatives' or their supervisors. Plaintiff will obtain this document for filing in the Court.

Exhibit 7: Plaintiff's written statement to the Inspector General's Office at the U. S. Department of Energy, resulting in two meetings with that office concerning identity theft naming Mr. Durbin's cohabitating friend, Ms. Sharon Sutton whom he supervised in the office, as the suspect in April 2002. A few weeks later Plaintiff was fired by Mr. Durbin. Plaintiff's request for an oral response to her removal was ignored by Mr. Durbin in retaliation.

Plaintiff believes that other employees supervised by Mr. Durbin have provided reports to the Inspector General, and Deputy Assistant Secretary at the U. S. Department of Energy, and the Federal Bureau of Investigation for waste fraud and abuse and Title VII violations.

**From:**  Fordham, Andre [Andre.Fordham@hq.doe.gov]
**Sent:**  Thursday, December 06, 2001 7:55 AM
**To:**  Klur, Larry; Fordham, Andre
**Cc:**  Reda, Richard; Hall, Barbara; Durbin, Stephen; Hutzler,
**Subject:** RE:

Larry, there are a few of things I need to say about this situation:

1) Mary agreed with allowing a third party observer attend any meetings between Barbara and Carolyn. Carolyn, to my understanding agreed to the third party being anyone at management's discretion. Therefore, Mary should hold fast to this agreement and only allow those to attend that are chosen by management. If Carolyn wants to bring someone of her choice, my advice to Mary is to call off the agreement of a third party and require/direct Carolyn to attend the meetings without an observer>

2) Under no circumstances should anyone from the union be allowed to sit in on these meetings. First, Carolyn is not in the bargaining unit, therefore, the union has no representational rights. For Al Knight to say that he is attending the meeting at the request of Carolyn's attorney is unacceptable. Please don't be deceived into believing that Al can remove his union hat in a meeting where he believes he has a right to be. Union officials cannot remove their union hats. If the attorney is concerned then let him/her come by and sit in. And please don't misunderstand, I am not suggesting that Mary agree to the attorney in the room. My point is that Mary does not have to follow what Carolyn's attorney wants in this situation. The statute gives management full discretion when exercising its rights to assign work. That means no union nor attorney have any rights to be present.

3) Currently, my office is preparing to defend before the FLRA, Carolyn's ineligibility for union coverage. Our position is that the nature of her position, according to statute, excludes her from bargaining coverage. Now, the reason why it is imperative that the union is not allowed is because management will be sending mixed signals. On one hand it is our position that Carolyn is ineligible for union coverage and on the other hand we permit the union to be present during meetings in a representational role. No, no, no. Believe me, when we get before FLRA, the union will probably say that it was allowed as union No, no, no. It will not serve the Agency nor EIA if we muddy the waters with allowing union presence.

4) EIA is bending over backwards for Carolyn but she continues to draw confusion and conflict at every turn. Her attempt to bring the union is an attempt to bring an ally and it is not Mary's intention that either Barbara or Carolyn show up at the meeting with an ally. Rather, the individual, as we all agreed during our meeting, is to serve as an observer. Under no circumstances should Al Knight or any other union official be permitted in these meetings. Barbara's words will be taken, turned around, and then the union will print a degrading article in the NTEU newsletter about management practices in EIA.

Bottom-line, enough is enough. It may be time to deal with Carolyn with a heavier hand. It maybe time for EIA to stop bending over backwards for this employee, straighten it's back and deal with this head on. How does an employee keep his/her job with this kind of behavior, uncooperativeness, and unsatisfactory performance?. Its time to reconsider the approach. I am available if needed to discuss this further.

> -----Original Message-----
> **From:** Klur, Larry [mailto:LARRY.KLUR@eia.doe.gov]
> **Sent:** Wednesday, December 05, 2001 3:46 PM
> **To:** Fordham, Andre
> **Cc:** REDA, RICHARD
> **Subject:**
> **Importance:**  High

12/6/2001

*Exhibit 1*

Carolyn Williams, accompanied by Al Knight, dropped by to have an unscheduled meeting with Hutzler just a while ago. Mary is out, but she will be coming back soon.

This follows a meeting that was scheduled this afternoon between Williams and her supervisor (Hall), with a nonparticipating observer attending. Williams sought to have Knight attend the meeting also, as her representative. The meeting was called off.

Advice for Hutzler?

Klur, Larry

| | |
|---|---|
| **From:** | Williams, Carolyn E |
| **Sent:** | Tuesday, January 08, 2002 5:27 PM |
| **To:** | Durbin, Stephen |
| **Cc:** | Hutzler, Mary; Marmolejos, Poli; Epps, Carolyn; Vaccarella, Frank; Fordham, Andre |
| **Subject:** | RE: Meeting/Civil Rights Investigation |

Thank you for the information, I am asking again for you to cite the federal regulation you are referring to and holding me to in ORM? Is this a new regulation for ORM? Is this an EIA regulation? Are your counseling other ORM employees also? Counseling is the first step in taking a corrective action. What am I being counseled for? Please be specific. Thank you. Carolyn E. Williams

----Original Message----
**From:**   Durbin, Stephen
**Sent:**   Tuesday, January 08, 2002 4:40 PM
**To:**   Williams, Carolyn E
**Cc:**   Hall, Barbara
**Subject:**   RE: Meeting/Civil Rights Investigation

The message I sent you is not a reprimand. It is a counseling message.

Any efforts (time), whether at your work station (preparing e-mail messages, making/receiving phone calls, etc.) *or* out of your immediate office related to your EEO complaint that is performed while you are in an *on-duty status* requires prior coordination/scheduling/approval of your supervisor as to the time, date and duration.

The prior coordination/scheduling/approval applies to all personal matters you wish to conduct while *on-duty*.

DOE time and attendance procedures require leave approving officials to manage the time (keep track) of their subordinates. Barbara Hall (and me in her absence) is your supervisor/leave approving official. Time devoted to non-official business (like pursuing an EEO complaint) by an employee in an on-duty status is managed/controlled by the supervisor. This requirement is not an ORM policy.

Carolyn, I am advising you to stop questioning every message I send you and to pay full attention to performing the tasks you have been assigned.

----Original Message----
**From:**   Williams, Carolyn E
**Sent:**   Tuesday, January 08, 2002 1:54 PM
**To:**   Durbin, Stephen
**Cc:**   Hutzler, Mary; Hall, Barbara; Epps, Carolyn; Vaccarella, Frank; Marmolejos, Poli
**Subject:**   RE: Meeting/Civil Rights Investigation

What specifically are your referring to today in your reprimand? And what other personal matters are your referring to? Please be specific. Also, is this new policy in ORM? If so please cite the law that you are referring to.
Thank you. Carolyn E. Williams

----Original Message----
**From:**   Durbin, Stephen
**Sent:**   Tuesday, January 08, 2002 12:49 PM
**To:** Williams, Carolyn E
**Cc:** Hutzler, Mary; Hall, Barbara; Epps, Carolyn; Vaccarella, Frank; Marmolejos, Poli
**Subject:**   FW: Meeting/Civil Rights Investigation
**Importance:**   High

1

*Exhibit-2*

Carolyn, this is the **third time** I have counseled you, in Barbara Hall's absence, on the use of your time in regards to your EEO complaint and/or other personal matters. If you fail to schedule with me, in Barbara Hall's absence, your desire to be away from this office and/or away from your official duties while in your office to take care of your EEO issues or for any other non-official business *(to include the preparation of related e-mail messages),* you will be charged Absent Without Leave for the time away from your official duties and be subject to formal disciplinary action.

Barbara Hall and I fully support and comply with the regulations that permit the granting of a reasonable amount of duty hours to an employee to prepare for and consult with agency EEO officials. However, this time must be reasonable, scheduled with your supervisor and in consideration of the mission needs of the office. You have failed consistently to comply with the need to schedule this time. You must cease this conduct immediately.

In addition, this scheduling requirement applies to any active duty status employee who is assisting you in a representational capacity. If such as employee does not obtain the approval of his/her leave approving official for the time, date and duration to assist you, he/she may not work with you during his/her official duty hours. Such employees are free to work with you during their lunch or while on approved leave or AWS.

If you have any doubts regarding the need to request time for your EEO or other non-official activities, I suggest you contact your EEO counselor.

——Original Message——
From:           Durbin, Stephen
Sent:           Thursday, January 03, 2002 2:26 PM
To:  Williams, Carolyn E .
Cc:  Hall, Barbara
Subject:        RE: Meeting/Civil Rights Investigation

In Ms. Hall's absence, you should be consulting me to request time to be from your work station. You have failed to do so.

——Original Message——
From:           Durbin, Stephen
Sent:           Friday, November 30, 2001 4:37 PM
To:             Williams, Carolyn E
Cc:             Hall, Barbara
Subject:        RE: Meeting/Civil Rights Investigation
Importance:     High

In the future, for all meetings and other occasions when you wish to be away from your work station, **except when directed by your immediate supervisor, Ms. Barbara Hall,** you are to request the time you need from Ms. Hall. Based on the needs of the office, she will work with you to find a time when you may be away from your work station for non-duty/non-job related activities. Note, these instructions do not include trips to the restroom or lunch which you should continue as in the past.

In addition, you should contact Ms. Hall for all leave scheduling as well as notify the timekeeper, Ms. Ramos, of all approved and non-scheduled leave.

Finally, Ms. Hall has told you that you are not authorized to work comp-time or overtime without her approval. I am also advising you that you should leave the office promptly when your tour of duty is over rather than continue to work on any

official business. If you wish to work on personal business after hours, I have no objections.

-----Original Message-----
**From:** Williams, Carolyn E
**Sent:** Wednesday, November 28, 2001 9:29 AM
**To:** Durbin, Stephen; Hall, Barbara
**Subject:** Meeting/Civil Rights Investigation

I will be in this meeting today beginning around 10:00 a.m.

## Klur, Larry

**To:**   Hutzler, Mary

**Subject:** RE: CW

---

—Original Message—
**From:** Hutzler, Mary
**Sent:** Tuesday, December 11, 2001 10:38 AM
**To:** Klur, Larry
**Subject:** FW: CW Memo

---

—Original Message—
**From:** Fordham, Andre [mailto:Andre.Fordham@hq.doe.gov]
**Sent:** Tuesday, December 11, 2001 10:30 AM
**To:** Hutzler, Mary
**Cc:** Reda, Richard
**Subject:** RE: CW Memo

Mary, I understand Steve's position on this.  However, I believe we need to stay the course we agreed to by having Barbara issue notice of warning to Carolyn.  Reason being, to date, Barbara has not issued any kind of warning regarding discipline because she did not have the authority.  By allowing Barbara an opportunity to put Carolyn on notice, it gives me greater confidence that a third party won't overturn a suspension/removal because we were procedurally incorrect.  Remember, Steve has to serve as the deciding official on any proposal of discipline.  The memos that Steve issued will not be forgotten.  In the event Carolyn appeals any action taken against her, Steve's memos will serve as supporting evidence that Carolyn had been given more than enough warnings. I rather build this case from your Nov 19th memo forward.

---

—Original Message—
**From:** Hutzler, Mary [mailto:MARY.HUTZLER@eia.doe.gov]
**Sent:** Tuesday, December 11, 2001 8:54 AM
**To:** Fordham, Andre
**Subject:** FW: CW Memo
**Importance:** High

Could I have your thoughts on this?

---

—Original Message—
**From:** Durbin, Stephen
**Sent:** Monday, December 10, 2001 6:38 PM
**To:** Hutzler, Mary
**Subject:** RE: CW Memo
**Importance:** High

With full respect for the attendees of this morning's discussion of the CW case, I do not believe the proposed warning is the best course of action for the efficiency of the service. The November 14, 2001, letter from Mary to CW enclosed all four of the counseling memoranda I had sent her in March/April.  Therefore, we can sustain a case that she is, or

12/11/2001

Exhibit 3

should be, familiar with their content.

Among other information, the April 18, 2001, memorandum stated the following:

"If you continue in this manner, you will subject yourself to disciplinary action for making provoking statements with the intent of damaging the reputation and/or effectiveness of another employee, for failing to follow direction and for causing disruption in the workplace. Furthermore, for nearly a month when either Ms. Hall or I attempt to schedule or hold a meeting with you to discuss your performance or conduct, you have avoided the situation by alleging you are ill. Your conduct in this regard is unacceptable, and you will be subject to disciplinary action if this conduct repeated."

"Also, I am **directing** you to meet with Ms. Hall to discuss your performance at a date and time of **her** choice and to follow whatever written and verbal instructions she gives you in this meeting."

"As a manager, I cannot maintain effective control over office operations if you are allowed to willfully disregard the feelings of others, to make false, misleading and/or inflammatory statement/allegations about your superiors or others, to interfere with the performance of official duties and to leave your work station for prolonged periods without approval or for other than official business. This type of conduct will not be tolerated. Your conduct adversely affects the productivity and morale of this office, and I cannot permit this to continue. Therefore, this memorandum serves to warn you that any repeat of such and/or similar conduct in the future will result in the initiation of a disciplinarian action against you, up to and including your removal from Federal service."

The April 19, 2001, memorandum stated in part:

"You also stated in your memorandum that at any meeting with Ms. Hall or me you are requesting the attendance of either a third or a fourth party. For a meeting with Ms. Hall and/or me to **discuss an assignment and/or counsel** you on your **performance,** your request is denied unless Ms. Hall and/or I agree to a third person attending. For a meeting with me to **counsel** you regarding your **conduct,** your request is denied. If I schedule a future meeting with you that concerns a **disciplinary action,** I will inform you sufficiently in advance to enable you to have a representative present. In the meantime, if you fail to meet with either of us at a date and time we designate, you will subject yourself to disciplinary action for failing to follow instructions or insubordination, depending on the circumstances of your refusal."

"As I told you in the counseling memorandum I gave you dated April 18, 2001, I cannot maintain effective control over office operations if you are allowed to willfully disregard the feelings of others, to make false, misleading and/or inflammatory statement/allegations about your superiors or others, to interfere with the performance of official duties and to leave your work station for prolonged periods without approval and/or for other than official office

12/11/2001

$G G G$

business. This type of conduct will not be tolerated. Your conduct adversely affects the productivity and morale of this office, and I cannot permit this to continue. Therefore, this memorandum serves to warn you that any repeat of such and/or similar conduct in the future will result in the initiation of a disciplinarian action against you, up to and including your removal from Federal service."

Given the specific instructions contained in the November 14, 2001, letter, and the clear warnings regarding disciplinarian action for non-compliance in the two memoranda cited above (that retained their currency by being enclosed with the letter), I believe this employee should be suspended for 14 calendar days without any further warning. Aside from the reference to e-mail communications, there is nothing in the draft warning that has not been communicated to CW at least twice. The burden of proof for this action is preponderance of evidence. The record shows clearly that three levels of management have made every reasonable effort to correct this employee's behavior to no avail. Waiting for this employee to continue this unsatisfactory conduct is not necessary to sustain a suspension, and doing so prolongs an extremely stressful situation for the first-line supervisor.

I do believe Barbara should meet with CW tomorrow as scheduled. I don't think Barbara should give her this warning. Instead, I think Barbara should give CW a suspension notice tomorrow afternoon regardless of the outcome of tomorrow morning's meeting.

Mary, I am saying another warning sends CW the wrong message considering what has transpired to date, but I am not saying this approach is wrong inherently. It is just not necessary.

-----Original Message-----
From:  Bingham, Carol
Sent:  Monday, December 10, 2001 5:32 PM
To:    Hall, Barbara
Cc:    Hutzler, Mary; Klur, Larry; Durbin, Stephen
Subject:    CW Memo
Importance:  High

Barbara:

The attached is the memo that Mary wants you to use, it has Larry Klur's corrections incorporated.

<< File: Carolyn on Notice.wpd >>

12/11/2001

# MEMORANDUM

February 14, 2002

To:    Poli Marmolejo

Re:    Your Memorandum Dated 8 February 2002

We appreciate your diligent, conscientious, and thoughtful efforts in response to the matters we brought to your attention in the C. Williams case in regard to our efforts to serve, at her designation, as EEO representatives on her behalf. The clarification of the opinion of the EEOC about the intent of 29 CFR 1614.605(a) is helpful. However, we take the meaning of your wording to be that the interpretation offered is not in fact a settled matter of either language or case law, as the statement in the rule is not explicit in delineating whether "representative" can be more than one individual, or whether such a limitation cannot be addressed in other, entirely acceptable ways to permit effective representation by more than one individual. We furthermore remain concerned to assure that the underlying purpose of the rule, which is to protect the lawful interests of all parties to fair and equitable treatment, is attained, especially in instances of suspected harassment, abuse, and threat to health or physical safety.

Nonetheless, our actions arose at the behest of C. Williams, and we are guided by our sincere understanding of the law and rule. We would appreciate any further clarification you may provide, in response to the issues we have raised above, and in consideration of the facts indicated in the attachment to our reply to the 8 February 2002 memorandum to us from Andre Fordham, of which you were provided a copy. We are particularly desirous of knowing how the rights of employees are to be protected in instances of clear violations by managers or supervisors, especially where there are apparent threats to health and safety. We understand the law to require due diligence and active intervention to protect legal interests, and to reduce the costs and liabilities that may be incurred by government. We furthermore understand the law to require that civil rights be upheld, and that management and supervisory authority does not supersede those civil rights established by Constitutional mandate and law. Finally, we understand that every one of us is bound by oath to uphold that Constitution and the just laws derived therefrom.

We hope that your reply might be drafted in a form that can inform all employees of the Department, from political appointees and executives to frontline workers, as these matters are of central importance to the morale and productivity of the Department where, as you know, the protection and enforcement of civil rights has been of longstanding concern and dispute. All employees should be better informed in these matters, for the guidance of their official conduct and the protection of their rights and persons. Thank you again for your concern and effort. We will anticipate your reply.

Richard H. Moore                    Harvey Major                    Charles Washington

cc:    Carolyn Williams
       Alane Tempchin, Esq.
       Steve Durbin
       Theresa Speake
       Andre Fordham

Exhibit 4

January 14, 2002

**MEMORANDUM FOR POLI MARMOLEJOS, DIRECTOR OFFICE OF CIVIL RIGHTS, OFFICE OF ECONOMIC IMPACT AND DIVERSITY**

FROM:                          C. Harvey Major
                               Richard H. Moore
                               Charles E. Washington

SUBJECT:                       January 4, 2002, Meeting Concerning Steven Durbin,
                               Barbara Hall, And Carolyn Williams

On January 4, 2002, we briefly met with you and expressed our concerns regarding the treatment Ms. Carolyn Williams is apparently being subjected to by her supervisors in EIA, specifically Mr. Steven Durbin and Ms. Barbara Hall. You may recall that you asked us to meet with your deputy, Ms. Maria Holleren-Rivera, because you were late for another meeting.

As requested, we met with Ms. Holleren-Rivera and related our concerns. We also specifically noted Mr. Durbin's failure to comply with 29 CFR 1614, which states that a complainant may have a representative of the complainants choosing present when discussing matters related to the complainants EEO complaints.

We will not repeat our discussion here, since Ms. Holleren-Rivera took copious notes during our meeting. Suffice to say, it is unreasonable to expect that Ms. Williams' attorney can drop everything and report to DOE each time Ms. Williams believes she is being retaliated against. We are Ms. Williams' in-house representatives as stated in the letter that was provided to Mr. Dubin and to Ms. Holleren-Rivera on January 4, 2002.

As Ms. Williams' in-house representatives, we are officially asking for a meeting with you to determine your position on Mr. Durbin's assertion that we cannot be present when Mr. Durbin discusses issues on which Ms. Williams' has filed EEO complaints. We would also like to discuss why Mr. Durbin and Ms. Hall could have witnesses present when they met with Ms. Williams but they refused to afford Ms. Williams' the same privilege, which appears to contravene 29 CFR 1614. We are especially interested in what reasonable accommodations Department officials can make to protect Ms. Williams from apparent disparate treatment, abusive language, and provoking speeches, as well as reported threats to her safety and health.

Thank your for your attention to this matter.

cc: Alane Tempchin, Esquire

*Exhibit - 5*

# MEMORANDUM

February 14, 2002

To:  Andre Fordham

Re:  Your Memorandum Dated 8 February 2002

Thank you for your concern in the matter of C. Williams.  However, be advised that your claims are in error and ill-informed.  Moreover, you did not conduct a proper investigation and, in your capacity as an employee and labor relations specialist, you must remain neutral and fair.

We, the undersigned, were requested, and did act, as designated EEO representatives of the subject party.  All our actions were fully in the scope of the law, as well as proper decorum and respect for authority, and are protected from retaliation or reprisal, including threat.  Moreover, we immediately provided full reports in every instance to appropriate authorities.

Any Federal employee may be asked to serve on behalf of another Federal employee in an EEO complaint, and that activity is protected under law from reprisal and retaliation, violations of which are violations of law.

Your continued interest is appreciated and we fully expect that you will be diligent in assuring full and proper adherence to law in the further conduct of your duties.


Richard H. Moore          Harvey Major          Charles Washington

Cc:  Claudia Cross, ME-50          Barbara Hall, EI-20
     Robert Keener, ME-53          Vicky Bailey, PI-1
     Poli Marmolejos, ED-4         David Garman, EE-1
     Theresa Speake, ED-1          Gregory H. Friedman, IG-1
     Susan Beard, GC-80            Timothy M. Dirks, ME-50
     Gus Goldberger, GC-80         Bruce Carnes, ME-1
     Steve Durbin, EI-20           Robert Card, US

Attachment

Exhibit - 6

Attachment

In a memorandum to Charles Washington, Harvey Major, and Richard Moore, dated February 8, 2002, Andre M. Fordham, HQ Employee/Labor Management Relations Services, made reference to our attempt to serve as EEO representatives for Ms. Carolyn Williams, at her behest, on two occasions, in meetings called by either her first- or second-line supervisor. He stated:

> On at least two occasions, you have inappropriately attempted to attend these performance/assignment related discussions between Ms. Williams and her management. Each time it was expressed by Ms. Williams' management that you were not invited to these meetings and your accompanying Ms. Williams would not be allowed. There is no right to representation in a meeting where employees and managers discuss performance and/or work assignments. Consequently, your being barred from these meetings resulted in disruption which led to Ms. Williams' refusal to meet with her management and/or the meeting being canceled.

His claims are rebuttable, erroneous, and obvious attempts at intimidation and retaliation. His authority, while subject to the civil rights laws, is not to interpret them. Because his actions are taken in the context of denying or discouraging legitimate representation, this constitutes the basis for an EEO complaint. Whether his interpretation of Federal rules is correct has by no means been established, but what is clear is that the plain language of 29 CFR 1614 states:

> **1614.605 Representation and official time.**
>
> (a) At any stage in the processing of a complaint, including the counseling stage under 1614.105, the complainant shall have the right to be accompanied, represented, and advised by a representative of complainant's choice.

We might add, as cited in *Guide To Federal Sector EEO Law & Practice* by Ernest C. Hadley:

> "Judicial interpretations of the protection afforded by Section 704(a) have consistently rejected the interpretation that only individuals who have participated in the EEO process are covered in private sector EEO matters....
>
> Federal courts, when discussing the issue of the protection of federal employees from retaliation, have generally held that federal employee protection is coextensive with the protection of employees in the private sector...."
>
> The opposition clause applies "regardless of whether the opposition activity involves allegations which the employer accurately asserts are false."...

"...under the protected opposition provision of the Act, appellant can set forth a proper claim of reprisal if: (1) the challenged employment practice violates Title VII, (2) she possessed a good faith, reasonable belief that it did, or (3) she possessed a subjective, good faith belief that Title VII was violated by the practice."

Furthermore, the civil service laws (5 USC 2302(b)) forbid personnel actions based on prohibited personnel practices, including:

Taking or failing to take, or threatening to take or fail to take, any personnel action because of exercising an appeal, complaint or grievance right; testifying or lawfully assisting any individual in the exercise of any appeal, complaint or grievance right; cooperating with or disclosing information to the Inspector General of an agency or the Special Counsel; or refusing to obey an order that would require the individual to violate a law...

Taking or failing to take any other personnel action if that would violate any law, rule, or regulation implementing or directly concerning the merit system principles...:.

Merit system principles established under civil service law (5 USC 2301(b)) include:

All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management...

The federal work force should be used efficiently and effectively...

Employees should be provided effective education and training in cases in which such education and training would result in better organizational and individual performance.

Employees should be protected against arbitrary action, personal favoritism, or coercion...

Employees should be protected against reprisal for the lawful disclosure of information which the employees reasonably believe evidences a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

It is a prohibited personnel practice to take or fail to take any personnel action if the taking of or failure to take the action violates any law, rule or regulation implementing or directly concerning these merit system principles.

In addition, under Department of Energy Notice DOE N 221.7, Reporting Fraud, Waste, And Abuse,

PURPOSE. To notify all Department of Energy (DOE) employees, including National Nuclear Security Administration (NNSA) employees, of their duty to report allegations of fraud, waste, and abuse to the appropriate authorities, including the DOE Office of Inspector General (OIG)...

it is our obligation to report instances of this nature, whether taken against us or against other employees in the Department. Contrary to myth, it is not discretionary whether Federal laws and rules on discrimination, fair and equal treatment, employee and labor rights, etc., shall be upheld. It is mandatory. And it is mandatory that employees charged with the enforcement of these laws do so in accordance with law. That would especially include employees who work directly for the offices responsible for implementing and advising on these laws. They cannot favor managers or supervisors in the instance of a grievance or complaint. They must conduct a fair and impartial inquiry to ascertain the facts. And, they must assure equal treatment.

In the subject memorandum, Mr. Fordham has directly made derogatory, if not defamatory, claims about us which he did not investigate. He has at no time interviewed us. He has moreover stated conclusions not established as facts. That appears to be a clear dereliction of his affirmative obligation to act in a fair and impartial manner. Such actions appear to be a violation of Department of Energy Order DOE 3750.1, WORK FORCE DISCIPLINE, which includes making false, unfounded, or highly irresponsible statements, and engaging in a prohibited personnel practice.

We should like to accord to him the benefit of the doubt, however, by assuming that his actions were well intended, if ill-informed. The situation as it stands is that we were asked by an employee to act as her representatives in a situation in which she has an active EEO complaint, as well as in which she has been denied bargaining unit status and thus cannot be represented by the union, at present. But, in the meanwhile, she has the indisputable right to EEO representation of her designation, and she should be protected from retaliation, threats, harassment and disparate treatment.

It is true that managers and supervisors have the right to make assignments and direct the work of subordinates. That right, however, is not absolute and is subject to adherence to law. In the case at hand, it appears that the work/performance meetings to which Mr. Fordham refers are being used as a pretext for attempts to harass and intimidate an employee who has filed an EEO complaint and who has a bona fide medical condition; and that those meetings are occurring under the color of exercising supervisory authority. (We presume Mr. Fordham is aware of the doctor's certification she has already submitted, with a copy provided to him.) That would constitute an unlawful abuse of authority in violation of civil rights laws, merit system principles, and prohibited personnel practices.

We at no time interfered with the exercise of either managerial or supervisory authority. We have never advised the individual we have attempted to represent to in any way violate her obligations as a Federal employee. We have, in fact, advised her that lawful

orders must be obeyed, consistent with reason, resources, and personal health and safety – all of which are proper considerations.

But, to fully assess the facts in this case also requires considering the context of the actions of the managers and supervisors who are party to it. The affected employee was caused, apparently by their actions, to suffer a medical emergency in which she was removed from the building on a stretcher by emergency medical personnel. The manager to whom she reports apparently then directed that she not be permitted physically to enter the Forrestal facility for a period that exceeded 6 months. She was neither charged nor convicted of any crime nor offense during this period, but was unable even to enter the building to file an EEO complaint. No apparent action was taken by Departmental officials to prevent, interrupt, or terminate this violation of her rights. However, now that she has returned to duty, official action is being taken to support the continuing actions of the same management officials who took this earlier action against her.

In our understanding of the law and our obligations as Federal employees, we are duty bound to report what we know, to act in a lawful capacity on her behalf when serving as designated EEO representatives, and to otherwise carry out our oath of office (5 USC 3331), which states:

> I, [name], do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter.

For the record, it should be noted that this oath is to the Constitution of the United States, not to persons, and to the faithful discharge of the duties of office, not to improper or unlawful orders.

For the record, as well, the three of us are in senior grades and have served as management officials and supervisors. We are quite cognizant of both our responsibilities and those of the Department. We have kept the appropriate Departmental officials fully informed of the incidents, having fully reported the facts to the Office of Civil Rights and the Office of Economic Impact and Diversity. With this memorandum attachment, we are also apprising the Office of the Inspector General.

On April 5, 2002, a contractor employee brought me a cell phone and said someone was calling me on the main Office of Resource Management, Energy Information Administration telephone number. I have never received a call on the main number here before. I have had the same number 202-586-9194 for over 5 years. The caller was from Chevy Chase bank, the female spoke with a Spanish accent and claimed to have been told by Pam to call me. I informed the female whom I do not recall identify herself, that I had no activity at their bank and did not know Pam at the bank.    I told her she had the wrong number, but the caller assured me she had dialed the number the Pam had given her. I told the person this was in error and gave the cell phone back to the male contractor filling in for Isabel Ramos, also a contractor.

On April 6, 2002, I arrived home around 6:30 p.m. and played a message from James Butler, of Beltway Toyota. Butler informed me I had applied for a car loan over the internet. I called him, I do not apply for loans on the internet. After I called Butler, I asked how he got my number. He explained that someone had telephone him and left, it; I asked what name, he claimed it was muffled. (I never gave him my name) and he never called my name. I told Butler this was fraud, and that I was going to the FBI. He asked me to hold and got a supervisor. The supervisor gave me another story, he claimed the buyer was in the showroom, and Butler must had dialed my number in error. I asked how long had the person been on their job that was applying for the internet loan he said 3 years. The supervisor said the buyer lived in District Heights or Oxon Hill, Maryland. The phone calls sound connected. I will provide you the number to Beltway Toyota tomorrow, I am very concerned about these two telephone calls. One at work and one at home. This is of grave concern to me, there is a staff member who is has a criminal record and has access to personnel and training information including telephone numbers, social security numbers and the like, working in ORM and keys to personnel files.    These bogus telephone calls to my home and at work have never happened to me before. I regret having to do this but I will meet with you and give you the name of the person and the county in which the crime was committed, and substance abuse.

*Carolyn E. Williams*
Signed

Exhibit-7

CERTIFICATE OF SERVICE

I certify that on 3 January, 2008, I mailed a copy of this Motion Not to Dismiss to the
Agency attorney listed below, first-class mail, postage pre-paid to:

> Mr. Darrell C. Valdez, Esq.
> U. S. Department of Justice
> 950 Pennsylvania Avenue, N.W.
> Washington, D. C. 20530

*Carolyn E. Williams*

Carolyn E. Williams
8931 Town Center Circle
Unit 308
Upper Marlboro, MD 20774
301-499-2935

cc: Clerk of the Court
    Mr. D. Valdez, Esq. Department of Justice