RECEIVED

MAR 1 0 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CAROLYN E. WILLIAMS) | ) |
| Plaintiff | ) Civil Action No. 07cv901 (RBW) |
| v. | ) |
| SAMUEL BODMAN, Secretary U. S. Secretary of Energy, et al. | ) |
| Defendants | ) |

## PLAINTIFF'S MOTION NOT TO DISMISS

COMES NOW THE Plaintiff, Carolyn E. Williams, a former employee at the United

States Department of Energy, (the "DOE") and the Plaintiff in this civil suit, seeks

compensatory damages and injunctive relief against Mr. Samuel Bodman, the Secretary

for the DOE, Mr. Stephen F. Durbin, Director, the Director of the Office Resource

Management Energy Information Administration, and Mr. Andre Fordham, formerly of

the Office of Labor Relations, DOE, under the Civil Rights Act of 1964, as amended in

1992, 42 U.S. C and 2000e-16 (2001), based on the Plaintiff's discriminatory threat to

Plaintiff's federal career because of her protected Equal Employment Opportunity, denial

of career advancement through a promotion, forcing Plaintiff our of her job for over six

months, having her building access terminated, removal of her top secret security

clearance and placement on a Performance Improvement Plan. Denying Plaintiff a

neutral party to review her completed work, denial of an oral response to her removal.

Mr. Durbin harassed the Plaintiff because of her sex. Plaintiff filed her civil action in a

1

timely manner, and has made corrections to Counts two and three of her Complaint.
Plaintiff, and her attorney the late Mr. Richard Semsker were denied a period of
discovery prior to the Equal Employment Opportunity Hearing Number 100a27834x.

## FACTUAL BACKGROUND

Plaintiff was detailed to the Energy Information Administration, and was later reassigned
to that office. In the reassignment to the position of Training Program Specialist GS-9
301 series, Plaintiff learned after receiving the Form 50 that her reassignment was a
lateral transfer, which can be an adverse action. The reassignment had no promotional
advancement. The Position Plaintiff had worked in for about 120 days prior to her
reassignment was at the GS-11 301 series and held by a non-Black American. Plaintiff
had no performance problems until after July 2000 when she reported a yelling,
screaming, intimidating and bating meeting held by her Team Leader with limited
supervisory authority. The Team Leader was disciplined, and "send home to cool off"
for a period of about eight weeks. Mr. Fordham of Labor Relations informed Plaintiff of
disciplinary actions taken against Ms. Barbara J. Hall. He said further, it was Ms. Allison
Davidow's decision not to inform Plaintiff of the disciplinary action. On October 2, or 3
of 2000, when Ms. Hall returned to work her actions towards Plaintiff were adverse,
leading to numerous Title VII violations against Plaintiff, the treatment culminated in
Plaintiff's firing on May 3, 2002.

## ARGUMENT

Factual Rebuttal

On March 12, 2002, Ms. Hall, Supervisor, Office of Resource Management, Administrative Team proposed to remove Plaintiff based on unacceptable performance during a performance improvement period commencing on December 5, 2001.

Under federal law, 5 U.S.C sec: 4302 (6) an employee may be removed due to unacceptable performance, but only after she has been given an opportunity to demonstrate successful performance. Where an employee's removal is proposed, the employee is entitled to 30 days' advance written notice of the proposed which identifies the specific instances of unacceptable performance by the employee on which the proposed action is based; and the critical elements of the employee's position involved in each instance of the unacceptable performance. 5 U.S.C. Sec. 4302 (b)(6).

The right to a meaningful opportunity to improve is one of the most important substantive rights in the performance appraisal framework. Adorador v. Dep't of Air Force, 38 MSPR 461 (1988). If the employee demonstrates acceptable performance during the improvement period or PIP provided by the agency, the agency is precluded from removing the employee solely on the basis of deficiencies that preceded and triggered the PIP. If the employee's performance is unacceptable during the PIP, the agency may base its action on that deficiency and need not also show deficient performance prior to the PIP. Brown v. VA, 44 MSPR 635, 640-41 (1990).

An agency can properly consider an appellant's performance following its issuance of a requirement letter or performance improvement plan to determine whether her performance fell short of satisfactory for any targeted critical element of the position

and to determine whether performance-based action is warranted. O'Hern v. GSA, 41 MSPR 280 (1989). But an agency cannot remove an employee for substandard performance prior to the opportunity period if the employee's performance during the opportunity period is adequate. Siedle v. Dep't of the Interior, 35 MSPR 241, 251 n. 14 (1987). It is unacceptable performance that triggers the unacceptable performance action through the notice of an opportunity to improve. An agency that rates and employee's performance as marginal may not give the employee an improvement period, then rate the employee and take action on the basis of the subsequent unacceptable performance. If the action taken is removal, it must be revered. The employee has not been given a reasonable opportunity to demonstrate acceptable performance. Colegan v. Dep't of the Navy, 28 MSPR 116 (1985)

Moreover, to establish a prima facie case of unsatisfactory performance justifying a personnel action such as removal, the agency may evidence by documentary or testimonial evidence to the effect that the employee was offered a reasonable opportunity to improve and in the face of a non-frivolous challenge, the burden rests with the agency to show full compliance with the requirement of Section 3201 (b)(6) by substantial evidence. Sandland v. GSA, 23 MSPR 583, 590 (1984).

The agency must prove that it has established a legitimate performance plan for an employee as a necessary predicate for a removal action. Brown, supra, at 642. The agency did not establish a legitimate performance plan for Plaintiff. An agency's decision to remove an employee "can be sustained only if the employee's performance is shown to be unacceptable under the standards contained in the employee's performance plan." Brown v. Veterans Admin, 44 M.S.P.R. 635, 643 (1990). "Agencies may not use

4

a performance improvement period either to reduce or to increase the standards of performance established at the <u>beginning</u> of the appraisal period." <u>Brown,</u> 44 M.S.P.R. at 643. the holding in <u>Brown, supra,</u> was followed by the Board in <u>Boggess v. Department of the Air Force,</u> 31 M.S.P.R. 461, 462-63 (1986). There the Board held that by simultaneously giving an employee revised performance standards that were materially different from his prior standards and notifying her both that his performance was unacceptable and that he had thirty days to improve, the agency had failed to fulfill the substantive requirement of 5 U.S.C and 4303 to provide the employee with an opportunity to improve. The Board also found that the employee was entitled to an appraisal period under the revised standards and to a further reasonable opportunity to improve after his performance was legitimately rated as unacceptable. Then, and only then, could a removal action be sustained. Moreover, the Board said that the administrative judge correctly found that the agency improperly gave the appellant a new performance plan when he was placed on the PIP. The new plan, too differed significantly from the employee's official plan of record. The Board held, as it has done in <u>Brown,</u> that the employee had not been given a reasonable opportunity to demonstrate acceptable performance.

b. Bad Faith

To defeat a performance action, the employee may raise a non-frivolous allegation of bad faith by the Agency as a defense to a removal action. <u>Beamon v. Dept of Labor,</u> 35 MSPR 15, 21-22-(1987) (testimony that the agency official stated that the PIP was only for documentation of appellant's removal and that the appellant would be removed following the PIP); see <u>Bonds v. USPS,</u> 33 MSPR 616 (1987) (Chapter 75 case:

employee may defensively plead and prove personal animus of his supervisor in performance action).   The Board has identified a number of circumstances in which the Agency has not afforded the employee a fair opportunity to improve. For example, in Sandland v.GSA, 23 MSPR 583, 590-91 (1984), the evidence demonstrated that prior to the improvement period his supervisor said that the employee would be removed, and during the PIP the supervisor cancelled several of the employee's field trips, excluded him from staff meetings, omitted him from the circulation list for important memos, and his authority was undermined.  Based on these facts, the employee could do nothing to correct the management practices his supervisor catechized and thus could not demonstrate acceptable performance.  Therefore, the MSPB found that the agency had not met its burden of providing by substantial evidence that appellant was afforded a reasonable opportunity to improve.  Also the MSPB has reversed removals where the supervisor predetermined the outcome of the PIP-this type of pre-decision effectively deprives the employee of any ability to improve. Zane v. Defense Investigative Serv, 26 MSPB 155, 157 (1985). Thompson v. Dep't of Air Force, 38 MSPR 461 (1988); Thompson, supra.  The opportunity to improve is a nullity if the agency determined in advance that the appellant will fail.  An opportunity to improve is denied if, because of an assessment by management that the employee's skills were inadequate even before the performance standards were developed, the appellant could do nothing to correct performance his supervisors constantly criticized through continual documentation of inconsequential conduct. Beasley v. Dep't of Air Force, 38 MSPR 213 (1984): Yetman v. Dep't of Army, 36 MSPR 425 (1988) (unreasonable expectations, limitations of employee's freedom of work and constant criticism of employee caused reversal of the

removal). Additionally, when a supervisor places an employee on a PIP and then creates difficulties for that employee, a removal citation will be reversed. In Deskins v. Dep't of Navy, 29 MSPR 276 (1985), a removal was reversed where the employee testified that his project subjected him to verbal abuse, insults and harassment that interfered with his ability to do his work. Other agency employees corroborated that the supervisor yells at the employee and behaved in a particularly hostile manor toward the employee. Furthermore, the employee was also denied official time and facilities to complete assigned projects, whereas other employees were granted overtime and use of facilities. Moreover, the opportunity to improve assumes that there is work to be done that, if successfully completed, will show improvement; the opportunity period is bogus if the employee is not provided substantive assignments calling for performance against the standards he must meet. See O'Neal v. Dep't of Army, 47 MSPR 433 (1991).

An agency can only base the removal on unacceptable performance one year prior to the proposed removal. Under 5 U.S.C. 4303 ( c ) (2)(A), the decision to remove an employee can only be based on instances of unacceptable performance that occurred during the one-year ending on the date the employee receives the 30-day advance written notice of the proposed action. The Agency may only support the removal with instances of unacceptable performance that occurred prior to the date of the notice of deficient performance. Martin v. FAA, 795 F. 2d 995 997 (Fed. Cir.1986); Weirauch v. Dep't of Army, 782 F.2d 1560 (Fed. Circ. 1986) ("The statute prohibits action being taken under Chapter 43 against an employee on the basis of incidents which occurred before the one-year period pending the notice of proposed adverse action. Thus, one year represents a permissible maximum, but not the minimum, appraisal period for an individual

employee.") The operative date here is March 12, 2001. In Plaintiff's case the PIP notice dated November 19, 2001, lists instances of unacceptable performance on 10-27-00; 2-16-01; 3-8-01 and 4-10-01. The notice of removal was issued on March 12, 2002, therefore any instances of unacceptable performance on 10-27-00; 2-16-01 and 3-8-01 may not be considered in the decision to remove Plaintiff. It is a Prohibited Personnel Practice to Take, Direct others to Take, Recommend or Approve a Personnel Action based on Discrimination or Retaliation. A Chapter 43 action may not be sustained if it is based upon a prohibited personnel practice. Under merit system principles and federal law, 5 U.S.C Sec 2302 defines "prohibited  personnel practices to include:" Any employee who has authority to take, direct other to take, recommend, or approve any personnel action, shall not, with respect to such authority- (1) discriminate for or against any employee or applicant for employment –(A) on the basis of race, color, religion, sex, or national origin, as prohibited under section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16 or  (9) take or fail to take, or threaten to take or fail to take any personnel action against any employee or applicant for employment because of – (A) the exercise of any appeal, complaint, or grievance right granted by law, rule or regulation. U.S. C. Sec 2302(b)

Allegations of discrimination may be proven through the  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1993) and its progeny's burden shifting process.  In this process (1) the plaintiff must establish a prima facie case of discrimination; (2) the employer must respond with a legitimate nondiscriminatory reason for its actions, and (3) the plaintiff must show that the articulated reason was a pretext to mask discrimination. The burden of establishing a prima facie case of disparate treatment is no onerous. Texas

8

Dep't of Community Affairs v. Burdine, 4450 U.S. 248, 253 (1981). The elements of a prima facie case, which Plaintiff clearly meets, are outlined in Employment Discrimination Law, Lindemann and Grossman, Chapter 2. They are flexible and so well established, they will not be reiterated here. The issue in the case will involve the proof of pretext. The articulated reason Plaintiff's discharge is her failure to perform.

An employer cannot "bootstrap" itself into immunity from Civil Rights actions by deliberately handicapping the performance of an employee and then citing that performance as the basis for adverse action. Edwards. Hodel, 738 F. Supp. 426 (D. Colo. 1990); Morgan v. Hertz Corp., 542 F. Supp. 123 (W.D. Tenn. 1981, aff'd, 725 F. 2d 1070 (6th Cir. 1984); Webb v. St. Louis Dispatch, 51 F 3d 147, 148-49, (6th Cir. 1995). The mitigating factors in evaluating adverse actions taken for performance reasons. Hatler v. Dep't of Air Force, 6 MSPR 724, 727, 6 MSPR 605 (1981). A number of relevant mitigating factors were identified in Douglas v. Veterans Administration, 5 MSPR 280, 306 (1981).  The Douglas  factors include, but are not limited to:

(1) the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;
(2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position.
(3) the employee's past disciplinary record;
(4) the employee's past work record, including dependability;
(4) the effect of the offense upon the employee's ability to perform at a satisfactory
(5) level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties.
(6) consistency of the penalty with those imposed upon other employees for the same or similar offenses;
(7) consistence of the penalty with any applicable agency table of penalties;
(8) the notoriety of the offense or its impact upon the reputation of the agency;
(9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;

(10) potential for the employee's rehabilitation;
(11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter and;
(12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by employee or others.

Douglas, 5 MSPR at 305-6. This list is not exhaustive and every factor will not always be applicable to each situation. First, taken as a whole Plaintiff's situation is rather unique. On April 26, 2001, Plaintiff was placed on enforced sick leave by Mr. Durbin. On November 14, 2001, the Acting Administrator for the Energy Information Administration ordered that Plaintiff should return to work on November 19, 2001. On the very day of her return, Ms. Hall had already drafted a performance improvement plan for Plaintiff although it does not appear as thought the PIP was officially issued until December 12, 2001. Notably, the performance improvement period began on December 5, 2001 even before the PIP had bee issued to Plaintiff. This certainly mitigates against nay fairness involved in this situation and give the appearance that the Agency was merely going through the necessary motions to remove Plaintiff without really affording her a true opportunity to improve her performance. Moreover, it is undisputed that communications issues have been a problem between Plaintiff and Ms. Hall. Meetings often deteriorated in a defense manner against Plaintiff. As identified in the Notice of Proposed removal, Ms. Hall cites instances where a third party had disrupted or interfered with her communications with Plaintiff. Plaintiff exercised her civil rights and labor rights cannot be a basis for a disciplinary action. Under 29 CFR Sec. 1614.605, an EEO Complaintant has the right to be represented by a representative of his or her choosing, and this representative may be another federal employee. In addition, an

employee has a right to have a representative present during meetings with management, which might result in disciplinary action under <u>Epilepsy Foundation v. National Labor Relations Bd.,</u> No. 00-1332 (D.C. Cir. Nov w, 2001). This decision extends traditional union employee rights to non-union rights. Thus, Ms. Hall's objections to Plaintiff two attempts to bring representatives to meetings during the PIP fell with her rights and Ms. Hall had no cause to complain that these individuals "interfered" in her ability to meet or manage Plaintiff. Basing the performance action on these grounds therefore constitutes a prohibited personnel practice under 5 U.S. C. 2302.

## PLAINTIFF'S CIVIL ACTION IS TIMELY

1. It was timely

a) Courts Days recite

b) Agency field for a Reconsideration

2. Assuming arguendo, the filing is technically late; the time period should be equitably tolled. DOE sought a Reconsideration to the EEOC 2006 Hearing; Plaintiff believed in good faith that his opened all matters up. This is why Plaintiff filed in opposition to the reconsideration. Plaintiff field her civil action on May 14, 2007, along with the filing fee.

## <u>INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED AS PARTIES</u>

Plaintiff seeks to proceed as the Court deems legal in this civil action.

## <u>DAMAGES</u>

Plaintiff has no plan, adequate, or complete remedy at law to redress the wrongs alleged, and is now suffering, and will continue to suffer irreparable injury from Defendant's intentional adverse actions.

## COUNT TWO

## Violations of Prohibited Personnel Practices, the and the Privacy Act

Violations of Prohibited personnel practices 2302 (b) 8. when Defendant(s) withheld information in an agency investigation adversely affecting the Plaintiff. On July 31, 2000, Plaintiff notified Mr. Coker of Security at the U.S. Department of Energy of workforce violence. As a result of this letter Ms. Hall was disciplined and sent home to "cool off," in a statement provided Plaintiff from Mr. Andre Fordham. Mr. Fordham informed Plaintiff that Ms. Allison Davidow, Director of Labor Relations made the decision not to inform Plaintiff, or her attorney of Ms. Hall's discipline. Defendants withheld this adverse information from the EEO Counselor, the contracted Investigator, and the Administrative Law Judge at the EEOC Hearing. Ms. Hall's adverse actions towards Plaintiff culminated in her recommending solely, that Plaintiff be fired on May 3, 2002. Further Mr. Fordham denied Plaintiff help in locating a neutral party to review her completed work in the PIP assignment. See McDonnell Douglas Corp v. Green, 411 U. S> 792 (1973). Texas Dep't of Community Affiars v. Burdine, 450 U.S. 248, 253 (1981). (2) Mr. Durbin violated Plaintiff's Privacy Rights when Mr. Durbin hired Mr. Gordon Rollins to review the numerous EEO cases naming him, as the discriminating official. Mr. Durbin withheld from Plaintiff's counsel, consent to access her personal and confidential data in her EEO cases, and her personnel records. Mr. Gordon had access to the protected EEO activity of Ms. Dorothy Pritchett, Mr. Joseph Santos and Mr. Leo Conrad, III and their personnel records. This actions has adversely affected Plaintiff.

12

(3) Mr. Durbin failed to notify the U. S. Department of Energy that he had hired a convicted cocaine user, in a high security agency with nuclear information and stockpiles. Ms. Sharon Y. Sutton had been fired from the U. S. Department of Energy in 1993, for substance abuse. Mr. Durbin then gave Ms. Sutton Plaintiff's job when Plaintiff was place on an illegal PIP. Ms. Sutton was supervised by Mr. Durbin, she has been promoted yearly, and received performance awards. During the EEOC Hearing Mr. Durbin refused to answer questions regarding his paramour, Ms. Sutton; who was not allowed to testify at the EEOC Hearing. (4) Mr. Durbin hired an foreign national, Ms. Maria Isabel Ramos, a contractor who worked at the U. S. Department of Energy without a green card. Ms. Ramos told a staff member of her lack of work credentials.

Respectfully submitted,

Carolyn E. Williams

Carolyn E. Williams, Pro se
8931 Town Center Circle
Unit 308
Upper Marlboro, MD 20774
301-499-2935

cc: Mr. Darrell C. Valdez
Assistant United States Attorney

13

## **EXHIBITS**

1. Plaintiff's Form 50 and position description at the GS-9 level, 301 series for the position of Training Program Specialist.

2. Ms. Turner's position of Training Program Specialist at the SG-11 level 301 series given to Plaintiff by Ms. Turner.

3. Letter to Mr. Coker of Security July 31, 2000.

4. Documents from the Circuit Court for Prince George's County, Maryland Regarding the Court sentencing of Ms. Sharon Y. Sutton. 3 pages.

   Plaintiff's right to file a civil actions was filed in the Court on May 14, 2007.

15

Rev 7/91
U.S. Office of Personnel Management
Guide to Processing Personnel Actions, Chapter 7

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| Williams, Carolyn E | 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 | 11-02-1946 | 03-26-2000 |

**FIRST ACTION**

| 5-A Code | 5-B Nature of Action | | 6-A Code | 6-B Nature of Action |
|---|---|---|---|---|
| 721 | Reassignment | | | |
| 5-C Code | 5-D Legal Authority | | 6-C Code | 6-D Legal Authority |
| N2M | Reg 335.102 | | | |
| 5-E Code | 5-F Legal Authority | | 6-E Code | 6-F Legal Authority |
| | | | | |

**SECOND ACTION**

| 7. FROM Position Title and Number | 15. TO Position Title and Number |
|---|---|
| Program Specialist<br>PD: 003041          Position: 00003823 | Training Program Specialist<br>PD: 013033          Position: 00004551 |

| 8. Pay Plan | 9. Occ Code | 10. Grade or Lvl | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ Code | 18. Grade or Lvl | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 0301 | 09 | 07 | $42,370.00 | PA | GS | 0301 | 09 | 07 | $42,370.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $38,854.00 | $3,516.00 | $42,370.00 | $0 | $38,854.00 | $3,516.00 | $42,370.00 | $0 |

| 14. Name and Location of Position's Organization | | 22. Name and Location of Position's Organization | |
|---|---|---|---|
| National Nuclear Security Administration<br>Dep Admin for Defense Programs (NNSA)<br>Asst Dep Admin for Res Dev & Simulation<br>Ofc of Computer Ops & Cyber Security | N111000000 | Energy Information Administration<br>Office of Resource Management | 3207000000 |

**EMPLOYEE DATA**

| 23. Veterans Preference | | | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|---|---|
| 1 | 1-None<br>2-5 Point | 3-10 Point/Disability<br>4-10 Point/Compensable | 5-10 Point/Other<br>6-10 Point/Compensable/30% | 1 | 0-None    2-Conditional<br>1-Permanent 3-Indefinite | | YES [ ]   X NO |

| 27. FEGLI | | 28. Annuitant Indicator | | 29. Pay Rate Determinant |
|---|---|---|---|---|
| M1 | Basic + Option B (2x) + Option C (1x) | 9 | 9 - Not Applicable | 0 |

| 30. Retirement Plan | | 31. Service Comp. Date (Leave) | 32. Work Schedule | | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|---|---|
| K | K-FERS and FICA | 11-09-1984 | F | F - Full Time | |

**POSITION DATA**

| 34. Position Occupied | | 35. FLSA Category | | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|---|---|
| 1 | 1-Competitive Service  3-SES General<br>2-Excepted Service    4-SES Career Reserved | E | E-Exempt<br>N-Nonexempt | MX-TA02 | 8888 |

| 38. Duty Station Code | 39. Duty Station | (City-County-State or Overseas Location) |
|---|---|---|
| 11-0010-001 | Washington Dist Columbia DC USA | |

| 40. Agency Data | 41. Emplid | 42. | 43. | 44. PAR Number |
|---|---|---|---|---|
| | 16132 | | | |

45. Remarks

- Position is at the full performance level.

*Exhibit (I)*

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| Department of Energy | |
| 47. Agency Code      48. Personnel Office ID      49. Approval Date | Lattisaw, Doreitha<br>Personnel Management Specialist |
| DN00        4225        03-26-2000 | *Doreitha C. Lattisaw* |

1 -        **Employee Copy**          Editions Prior to 7/91 Are Not Usable After 6/30/93

*Rec. June 1, 2000*
*from Davine Harris*

TRAINING PROGRAM SPECIALIST
GS-301-09

## INTRODUCTION

This position is located in the Office of Resource Management (ORM), Energy Information Administration (EIA). The Office is responsible for providing centralized administrative support activities for EIA, including human resource management. The incumbent is responsible for the development, coordination and/or implementation of EIA-wide training programs for EIA's Federal staff, including annual training needs assessments and corporate training plans.

The incumbent performs functions involving the design, development, delivery, coordination, and evaluation of professional, technical, and other training and educational development program requirements and procedures associated with overall aspects of Federal staffing needs, such as employee orientation, general education, career development, special recruiting or training programs, and training for specific functional or technical areas.

## MAJOR DUTIES AND RESPONSIBILITIES

Collective Bargaining Agreement Requirements: Incumbent serves as advisor to EIA employees for all issues that pertain to the implementation, interpretation and negotiation of training issues arising from the Headquarters Collective Bargaining Agreement. Interpret policies and procedures to facilitate EIA's compliance with all training aspects of the Agreement. Advise EIA employees of their responsibilities under the Agreement, monitors EIA's compliance with the governing Articles of the Agreement, and prepares periodic reports senior management officials regarding EIA's management team in partnership and other meetings with union representatives.

Program Development/Assessment: Participates in the development of the criteria, standards, and guidelines for carrying out and evaluating such training and development program activities as the Women's Executive Leadership Program, the Executive Potential Program, and the New Leader Program. Initiates and conducts periodic and annual studies, need assessments, and/or audits of training and educational development activities to ensure that these programs meet EIA educational development and address key mission needs. Conduct cost analyses to show trends to inform senior management and develops training plans to identify needed training. The training/education results are analyzed through the use of questionnaires, interviews and related methods. Based on such analyses and observations, works closely with EIA managers, supervisors, administrative, professional and technical staff to recommend, plan, initiate, and oversee the modifications or elimination of current training/educational development activities or the development of new training approaches or programs.

Serves as liaison with counterparts in other Federal statistical agencies to gain insight into and stay abreast of their training techniques and applications. Examines their training programs regularly and periodically advises EIA managers of practices that would be beneficial to EIA.

Personnel Related Training/Educational Development: Participates in the planning, development, implementation, administration, and coordination of administrative-related training, education development and career development program activities (i.e., team building courses, communications courses, communication courses, etc.) Initiates and plays a key role in the development, implementation, and administrations of master training and educational development agreements, plans, and procedures for major organizational components in the light of specific EIA mission requirements, organizations functions, and occupations requirements.

Page 1 of 4

Ensures that intern, IPA, mentor, etc. agreements and procedures provide for the realistic appropriate, and timely identification, selection, appointment placement and development of participants. Assists managers and supervisor in developing, modifying, and "fine tuning" Individual Development Plans (IDP). Ensures their compatibility with Office of Personnel Management (OPM) and DOE requirements and objectives, Ensures that specific IDP provide and/or result in appropriate and relevant on-the-job (OJT) and additional and properly approved education or training in line with the employee's career goals, personal interests, and demonstrated capabilities.

Develops criteria and works closely with HR training staff and EIA management and supervisors to locate and obtain approval for the established of training opportunities, and participates in expediting the selection and processing of candidates.

Plans, develops, and reviews the standards, criteria, and procedures for evaluating participants of training and development programs based on IDP requirements and content. Provides guidance, information, and assistance to EIA managers and supervisors on these requirements, in the resolution of problems, and in initiating any changes required. Assumes responsibility for the development and maintenance of appropriate records and documents, and the development and submissions of reports.

<u>Training Budget Responsibilities</u>: Actively participates in the formulation and execution process for the EIA training budget. Seeks resolutions for budget problems that cannot be solved at the program office level. Negotiates training course content for corporate and cross-organizational training. Incumbent manages the corporate training budget, which funds special programs such as New Leader Program, the Women Executive Leadership Program, and the Executive Potential Program within EIA. Ensures the selection process is in accordance with DOE policy and in the best interest of EIA and its mission. The incumbent makes information on training opportunities available electronically and locates appropriate training in response to customer requests.

<u>Professional and Technical Training</u>: Collaborates and confers with EIA management, supervisors, and program staff, scientific, specialized technical staff, and equivalent support service contracting staff on the technical and procedural aspects of EIA training/education program requirements, design strategies, plans, design criteria or options, and curricula. Considers, applies, or recommends the use of appropriate educational development and training methods, techniques, and procedures to make maximum use of interactive video, computer aided simulation or instruction, or other innovative technique and equipment to conduct orientation, briefings, or instruction in a variety of technical or function matters. Recommends and monitors training program design, implementation, and evaluation activities or the assistance provided by contractors.

<u>Training Development and Relations</u>: Keeps abreast of current training and educational development theories, practices, methods, and techniques applicable to the development of curricula and accompanying materials, classroom instruction, the assessment of training and education, and associated equipment, tools, methods, and techniques, through reading, study, exchanging information with other specialists in the field, and attendance at conference and seminars. Serves as EIA point of contact for training information with HR training staff, DOE staff and training specialist, and staff of other Federal agencies.

Serves as backup to the Management Analyst and to other ORM staff involved in human resources and workforces planning tasks for approximately 20% of the time. Advises managers on personnel management issues in the absence of the absence of Management Analyst. Also, functions as liaison with HR in the absence of Management Analyst, especially as it relates to labor relations.

Performs other duties as assigned.

<u>Factor 1. Knowledge Required by the Position</u>                FL 1-6 (950pts)

Knowledge of educational development and training program requirements, objectives, standards, criteria, procedures, and documentation contained in Federal regulations, bulletins and notices, applicable DOE directives and the Headquarters Collective Bargaining Agreement in order to develop, administer, coordinate and provide technical recommendations, guidance, assistance, and information on such requirements.

Knowledge of Federal and other administrative principles, practices, polices, requirements, and procedures necessary to analyze and provide guidance, assistance, and information on training and development program curricula, instructions, and activities applicable to executive, management and supervisory training.

Knowledge of DOE/EIA organizational missions, objectives, structures, functions, and relationships, including a knowledge of skill requirement and agency demographics in order to determine current and future training, educational and career development needs, develop programs, evaluated the success of such programs.

Knowledge of the training programs of other Federal statistical agencies.

Ability to communicate orally and in writing to provide guidance, advice, and assistance.

<u>Factor 2. Supervisory Controls</u>                FL 2-3 (275pts)

The incumbent receives supervision from the Administrative Team Leader, who provides overall objectives and establishes basic work priorities, The employee independently plans and completes assignments and handles problems and deviations in accordance with instructions, policies, and experience and familiarity with a broad range of training, practice methods, techniques, and procedures. However, the supervisor/ Team Leader provides assistance on highly controversial policy issues or on new . . .

<u>Factor 3. Guidelines</u>                FL 3-3 (275pts)

Guidelines include accepted training and educational development regulations, guidelines, practices, approaches, method, techniques, and procedures. In additions, there are specific Federal and DOE regulations, Policies, procedures, and documentation which must be followed or complied with. There are also EIA mission, resources implications and internal policies and procedures which must be considered in determine, planning, implementing, coordination, and evaluating EIA training and development program activities.

<u>Factor 4. Complexity</u>                FL 4-4 (225pts)

Work assignments require the incumbent to establish work priorities and carry out a variety of different tasks on a daily basis to meet the needs of various organizational components, each expecting priority services. Decisions made include discussing options for training with the supervisor, Team Leader, or senior analyst, provide guidance and assistance in the preparation of training requests, and assembling supporting documentation to assist operating personnel in meeting management objectives. The nature of this work requires usual care and attention in order to protect the privacy of employees, and applicants.

<u>Factor 5. Scope and Effect</u>                FL 5-4 (225pts)

The purpose of the work is to provide technical guidance and assistance to EIA employees which contributes to the timely, and effective support of training management activities.

Factor 6. Personal Contacts                                    FL-6-2

The employee has frequent and continuing personal contact with EIA employees, private sector training office, and other training providers.

Factor 7. Purpose of Contacts                                  FL7b (75pts)

The purpose of the contacts is to obtain, discuss, provide advice and guidance and making training management decisions.

Factor 8. Physical Demands                                     FL 8-1 (5pts)

The work is sedentary.

Factor 9. Work Environment                                     FL 9-1 (5pts)

TOTAL POINTS: 2035 (GS-09: 1835-2100)
GRADE          9

# TRAINING PROGRAM SPECIALIST
# GS-301

## INTRODUCTION

This position is located in the Office of Resource Management (ORM), Energy Information Administration (EIA). The Office is responsible for providing centralized administrative support activities for EIA, including human resource management. The incumbent is responsible for the development, coordination and/or implementation of EIA-wide training programs for EIA's Federal staff, including annual training needs assessment and corporate training plans.

The incumbent performs functions involving the design, development, delivery, coordination, and evaluation of professional, technical, and other training and educational development programs requirements and procedures associated with overall aspects of Federal staffing needs, such as employee orientation, general educational career development, special recruiting or training programs, and training for specific functional or technical areas.

## MAJOR DUTIES AND RESPONSIBILITIES

Collective Bargaining Agreement Requirements: Serves as advisor to EIA managers for all issues that pertain to the implementation, interpretation and negotiation of training issues arising from the Headquarters Collective Bargaining Agreement. Recommends policies and procedures to facilitate EIA's compliance with all training aspects of the agreement. Advises EIA managers of their responsibilities under the Agreement, monitors EIA's compliance with the governing Articles of the Agreement, and prepares periodic reports to senior management officials regarding EIA's progress in meeting the Agreement requirements. Participates as a member of EIA's management team in partnership and other meetings with union representatives.

Program Development/Assessment: Actively participates in the development of criteria, standards, and guidelines for carrying out and evaluating such training and development program activities as the Women's Executive Leadership Program, the Executive Potential Program, the New Leader Program and the Aspiring Leader Program. Initiates and conducts periodic and annual studies, needs assessments, and/or audits of training and educational development activities to ensure that these programs meet EIA educational objectives and address key mission needs. Conducts cost analyses to show trends to inform senior management and develops training plans to identify needed training. Analyzes the end results of training/education through the use of questionnaires, interviews and related methods. Based on such analyses and observations, works closely with EIA managers, supervisors, program, administrative, professional and technical staff to recommend, plan, initiate, and oversee the modification or elimination of current training/educational development activities or the development of new training approaches or programs and workforce planning.

Serves as liaison with counterparts in other Federal statistical agencies to gain insight into and stay abreast of their training techniques and applications. Regularly examines these training programs and periodically advises EIA managers of practices that would be beneficial to EIA.

Personnel Related Training/Educational Development: Participates in the planning, development, implementation, administration, and coordination of administrative-related training, education development and career development program activities (i.e., team building courses,

*Exhibit (2)*

communication courses, etc.). Initiates and plays a key role in the development, implementation, and administration of master training and educational development agreements, plans, and procedures for major organizational components in the light of specific EIA mission requirements, organizational functions, and occupational requirements.

Ensures that intern, IPA, mentor, etc. agreements and procedures provide for the realistic, appropriate, and timely identification, selection, appointment, placement, and development of participants. Assists managers and supervisors in developing, modifying, and "fine tuning" Individual Development Plans (IDPs). Ensures their compatibility with Office of Personnel Management (OPM) and DOE requirements and objectives. Ensures that specific IDPs provide education or training in line with the employees' career goals, personal interests, and demonstrated capabilities.

Develops criteria and works closely with HR training staff and EIA management and supervisors to locate and obtain approval for the establishment of training opportunities, and participates in expediting the selection and processing of candidates.

Plans, develops, and reviews the standards, criteria, and procedures for evaluating participants of training and development programs based on IDP requirements and content. Provides guidance, information, and assistance to EIA managers and supervisors on these requirements, in the resolution of problems, and in initiating any changes required. Assumes responsibility for the development and maintenance of appropriate records and documents, and the development and submission of reports.

Training Budget Responsibilities: Actively participates in the formulation and execution process for the EIA training budget. Seeks resolutions for budget problems that cannot be solved at the program office level. Negotiates training course content for corporate and cross-organizational training. Incumbent manages the corporate training budget, which funds special programs such as the New Leader Program, Women's Executive Leadership Program, Executive Potential Program and the Aspiring Leader Program within EIA. Ensures the selection process is in accordance with DOE policy and in the best interest of EIA and its mission. The incumbent makes information on training opportunities available electronically and locates appropriate training in response to customer requests.

Professional and Technical Training: Collaborates and confers with EIA management, supervisors, and program staff, scientific, specialized technical staff, and equivalent support services contracting staff on the technical and procedural aspects of EIA training/education program requirements, design strategies, plans, design criteria or options, and curricula. Considers, applies, or recommends the use of appropriate educational development and training methods, techniques, and procedures to make maximum use of interactive video, computer aided simulation or instruction, or other innovative techniques and equipment to conduct orientation, briefing, or instruction in a variety of technical or functional matters. Recommends and monitors training program design, implementation, and evaluation activities or the assistance provided by contractors.

Training Development and Relations: Keeps abreast of current training and educational development theories, practices, methods, and techniques applicable to the development of curricula and accompanying materials, classroom instruction, the assessment of training and education, and associated equipment, tools, methods, and techniques, through reading, study, exchanging information with other specialists in the field, and attendance at conferences and

seminars. Serves as EIA point of contact for training information with HR training staff, DOE staff and training specialist, and staff of other Federal agencies.

Serves as backup to the Management Analyst and to the ORM staff involved in human resources and workforce planning tasks. Advises managers on personnel management issues in the absence of the Management Analyst. Also, functions as liaison with HR, in the absence of the Management Analyst, especially as it relates to labor relations.

Performs other duties as assigned.

Factor 1. Knowledge required by the Position

A sound working knowledge of educational development and training program requirements, objectives standards, criteria, procedures, and documentation contained in Federal Regulations, bulletins, and notices, applicable DOE directives, and the Headquarters Collective Bargaining Agreement in order to develop, administer, coordinate and provide technical recommendations, guidance, assistance, and information on such requirements.

A sound working knowledge of Federal and other administrative principles, practices, policies, requirements, and procedures necessary to analyze and provide guidance, assistance and information on training and development program curricula, instruction, and activities applicable to executive, management and supervisory training.

A sound working knowledge of DOE/EIA organizational missions, objectives, structures, functions, and relationships, including a knowledge of skill requirements and agency demographics in order to determine current and future training, educational and career development needs, develop programs, and evaluate the success of such programs.

Sufficient skill in understanding, interpreting, and applying guidance and providing information and assistance on administrative training requirements, guidelines, and instructions to facilitate the preparation, submission, and approval of training requests, documentation, and reports.

Sufficient written communications skills to review and evaluate written materials, including instructional materials and plans, prepare narrative studies, summaries, tables, and reports about training and educational development activities.

Ability to communicate orally and establish effective personal relations to provide guidance, advice, and assistance and conduct personnel liaison, or follow-up activities.

Factor 2. Supervisory Controls

The incumbent receives general supervision from the Director, ORM and receives technical guidance from the Administrative Team Leader, who provides overall objectives and establishes basic work priorities. The incumbent independently plans and completes assignments and handles problems and deviations in accordance with instructions, policies, and experience and familiarity with a broad range of training practices, methods, techniques, and procedures. However, the supervisor and team leader are kept informed of new problems, unusual situations, and proposed approaches and solutions developed to deal with them. The supervisor/team leader provides assistance on highly controversial policy issues or on new training and education development initiatives with substantial program impact.

Completed training and education development planning efforts, technical advice, and products are accepted as technically appropriate and valid. Review primarily concerns the evaluation of the incumbent's effectiveness in meeting agency mission requirements and functions, and occupational, employee, and career development needs.

Factor 3. Guidelines

Guidelines consist of general administrative policies and management and organizational theories which require considerable adaptation and interpretation for application to issues and problems studies. The incumbent must be able to apply administrative policies and precedent studies to provide a basic outline of the results desired. Guidelines may also include accepted training and educational development regulations, guidelines, practices, approaches, methods, techniques, and procedures. In addition, the area specific Federal and DOE regulations, policies, procedures, and documentation which must be followed or complied with. There are also EIA mission, resource implications and internal policies and procedures that must be considered in determining, planning, implementing, coordinating, and evaluating EIA training and development program activities. The incumbent must apply experience and judgement about training and educational development activities. Makes sound decisions about appropriate curriculum determination and development, training strategies, approaches, and procedures. Within the context of broad regulatory guidelines the incumbent may refine or develop more specific guidelines such as implementing regulations or methods to improve the effectiveness and productivity in the administration of training programs and procedures.

Factor 4. Complexity

Work assignments consist of projects and studies that require analysis on interrelated issues of effectiveness, efficiency, and productivity of substantive mission-oriented programs. The incumbent makes decisions about how to proceed in planning, organizing and conducting studies that may be complicated by the changes in the organizations mission and functions, or legislative changes. Work assignments require the incumbent to establish work priorities and carry out a variety of different tasks on a daily basis to meet the needs of various organizational components, each expecting priority services. The incumbent provides guidance and assistance, and discusses options for training with the supervisor, team leader, or senior analyst. The incumbent provides guidance and assistance in the preparation of training requests, assembling supporting documentation to assist operating personnel in meeting management objectives. The nature of this work requires unusual care and attention in order to protect the privacy of the employees and applicants. The incumbent must apply experience and knowledge when recommending alternative training avenues or choices. The employee demonstrates strong public relations skills in obtaining agreement of managers and supervisors on training priorities, procedures, or workforce demographics. The incumbent must be knowledgeable on Federal training regulations and operating personnel office philosophy or preference.

Factor 5. Scope and Effect

The purpose of the work is to provide guidance and assistance to EIA managers, supervisors, and employees, thus providing important contributions in information dissemination. Incumbent is expected to provide timely, appropriate, and effective support of training management activities. The advice provided supervisors contributes to the improvement and development of training practices throughout EIA and therefore impacts the ability of EIA to achieve it's goals and objectives. The work involves identifying and developing ways to resolve problems or cope with issues that directly affect the accomplishments of principal program goals and objectives.

July 31, 2000
8931 Town Center Circle
Unit 308
Upper Marlboro, MD 20774

Mr. Charles Coker, Manager
DOE Headquarters Physical Protection Program
Forrestal Building Room 1G-042
1000 Independence Avenue, S.W.
Washington, D.C. 20585

Dear Mr. Coker:

I am a victim of Workforce violence in the Office of Resource Management, (ORM) Energy
Information Administration by Team Leader, Ms. Barbara Hall. On Tuesday, July 25, 2000, at a
regular required meeting for the Administration Team only, I was summoned to Ms. Hall's
office. The purpose of the meeting was to provide data on the dialogue sheets she required I turn
in weekly. At this meeting beginning at 8:15 a.m., I was repeatedly yelled at by the Team
Leader, Ms. Barbara Hall, for an hour; and witnessed hostile and erratic behavior in which I
believe that I was in physical danger. I am informed that Ms. Hall has military experience.

This terrifying incident has frightened and upset me so much that I do not ever, want to be alone
with Ms. Hall at work. There are several ORM employees who heard Ms. Hall yelling at me and
speaking to me in hostile and violent tones. This is not the first time I have been subjected to
Ms. Hall's violence and verbal abuse in the workplace; on June 20, 2000. Ms. Hall's hostile
statements and actions towards me caused me to experience rapid heart beat and high blood
pressure. This fact can be documented.

Sincerely,

*Carolyn E. Williams*

Carolyn E. Williams, (Mrs.)
Training Program Specialists
Business (202) 586-9194

ROI 01-(47) H/EIA

Exhibit (3)

16

# IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

STATE OF MARYLAND

VS

Sharon Y. Sutton 7·20·67

DEFENDANT/PETITIONER                          D O B

3404 W. Coquelin Terrace
ADDRESS
Chevy Chase, MD   20815
ADDRESS

CASE # _CTO10308B_

Reference Dist. Ct. Case # _CKSE0C163722_

**Tracking #000001726620**

## ORDER FOR EXPUNGEMENT OF RECORDS

The petitioner having been found to be entitled to expungement of the police records pertaining to the arrest, detention, or confinement of the petitioner on or about _MARCH 15_ , 20 _01_ , at _LANHAM, PRINCE GEORGES County_ , Maryland by a law enforcement officer of the _PRINCE Georgas Police Department_
(LAW ENFORCEMENT AGENCY)
and the court records in this action, it is by the Circuit Court for Prince George's County, Maryland this _____ day of _____ , 20_____ .

**ORDERED,** that each of the following named custodians of police records **and the Central Repository shall Expunge** the records pertaining to petitioner's arrest detention, or confinement and comply with the provisions of Section 736(c) of Article 27 of the Annotated Code of Maryland:

_Prince George County Police_      _BARLOWE RD_
_____    _____
_____    _____
(LAW ENFORCEMENT AGENCY)           (ADDRESS)

**IT IS FURTHER ORDERED,** that the clerk serve a true copy of this Order on each of the parties to this proceeding; and

**IT IS FURTHER ORDERED,** that within 30 days after entry of this Order or upon expiration of any stay the clerk and each of the following named custodians of court records in this action or proceeding shall expunge all court records in their custody in accordance with Rule 4-511:

| CLERK OF CIRCUIT COURT | COURTHOUSE, UPPER MARLBORO, MD. |
|---|---|
| COURT REPORTER'S OFFICE | COURTHOUSE, UPPER MARLBORO, MD. |
| CLERK OF DISTRICT COURT | COURTHOUSE, UPPER MARLBORO, MD. |
| | |
| (CUSTODIAN) | (ADDRESS) |

**IT IS FURTHER ORDERED,** that the following public or private institutions or agencies to which court records may have been disseminated are requested to expunge such records in their custody:

| | |
|---|---|
| | |
| | |
| (INSTITUTION/AGENCY) | (ADDRESS) |

_Exhibit (4)_

**Seventh Judicial Circuit of Maryland**

COURT HOUSE

UPPER MARLBORO, MARYLAND 20772

JUDGE'S CHAMBERS

February 17, 2004

**FILED**

FEB 19 2004 #98

CLERK OF THE CIRCUIT COURT
FOR PRINCE GEORGES COUNTY, MD.

Sharon Y. Sutton
3404 W. Coquelin Terrace
Chevy Chase, MD 20815

Re:    State v. Sharon Y. Sutton
       Case No. CT010308B

Dear Ms. Sutton:

The Honorable Dwight Jackson now handles all criminal expungements in the Circuit Court for Prince George's County. Judge Jackson has received your request for expungement in the above-referenced matters, and he has asked me to respond to you on his behalf.

He has reviewed the case files, and pursuant to the Maryland Annotated Code, Criminal Procedure, §10-105, and the previous Article 27, Section 737 you are premature in filing a request for an expungement in this matter. A "probation before judgment" disposition is eligible for expungement <u>when either 3 years have passed since disposition</u> <u>**or** when discharged from probation</u>, **whichever is later**. Thus, in this case, you are not eligible for consideration of an expungement in this case until after 3 years from the disposition date of December 18, 2003, which the entry of judgment was stayed pursuant to Criminal Procedure 6-220.

Enclosed for your perusal is a copy of Criminal Procedure, §10-105, which outlines when one is eligible to receive an expungement. Therefore, Judge Jackson has no authority to grant an expungement in this matter at this time.

Sincerely,

Rodney A. Butler
Law Clerk
To the Honorable Dwight D. Jackson

Enc.

CIRCUIT COURT FOR ~~INCE GEORGE'S COUNTY, MAR~~ ~~~D
COURTHOUSE, ~~ER MARLBORO, MARYLAND 20~~

ST OF MARYLAND

vs

SHARON YVETTE SUTTON

CASE NO. CT0103088
07/03/02
TRACKING # 000001726620
DIST CT #CRSE00168922

## CHARGE SUMMARY

THERE ARE A TOTAL OF 3 CHARGES.

POS OF CDS W/I TO DISTRIB
ART/SEC: 27    286    / DISPOSITION: NOLLE PROS

POSSESSION OF CDS
ART/SEC: 27    287    / DISPOSITION: GUILTY

POS OF PARAPHERNALIA
ART/SEC: 27    287A    / DISPOSITION: NOLLE PROS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 10, 2008, the foregoing Motion Not to Dismiss was sent, by first-class mail, postage pre-paid, to Mr. Darrell C. Valdez, Assistant United States Attorney, at the U. S. Department of Justice.

*Carolyn E. Williams*

Carolyn E. Williams, Pro se
8931 Town Center Circle, Unit 308
Upper Marlboro, MD  20774
301-499-2945

14