**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
CAROLYN E. WILLIAMS,                    )
                                        )
            Plaintiff,                  )
                                        )
        v.                              )   Civil Action No. 07-901  (RBW)
                                        )
STEVEN CHU,                             )
Secretary of Energy, et al.,            )
                                        )
            Defendants.                 )
_____)

**MEMORANDUM OPINION**

Carolyn E. Williams, a former employee of the United States Department of Energy (the "DOE") and the pro se plaintiff in this civil lawsuit, seeks compensatory damages and injunctive relief against Steven Chu, the Secretary of the DOE, in his official capacity,[1] along with Stephen F. Durbin, the Director of the Office of Resource Management at the Energy Information Administration, and Andre Fordham, "formerly of the Office of Labor Relations, DOE," under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–2000e-17 (2006).  Compl. at 2.  This action was initiated by the plaintiff based upon the defendants' alleged "discrimina[to]ry threat to [the plaintiff's] federal career because of her protected Equal Employment Opportunity [] activity, denial of a promotion, [and] place[ment] on a Performance Improvement Plan[] after being ordered out of her job for over six months and having her building access terminated."  Id.  Currently before the Court is the defendants' motion to dismiss the plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f).  Defendants' Motion to

---

[1] The plaintiff's complaint actually names Samuel W. Bodman, the Secretary of Energy at the time of the commencement of this lawsuit, as the lead defendant.  Complaint (the "Compl.") at 1.  The Court has substituted the name of Secretary Chu, the current Secretary of the DOE, as the lead defendant for former Secretary Bodman pursuant to Federal Rule of Civil Procedure 25(d).

Dismiss at 1.  After carefully considering the plaintiff's complaint, the defendants' motion, and all memoranda of law and exhibits relating to that motion,[2] the Court concludes that it must grant the defendants' motion in part and deny it in part for the reasons that follow.

As an initial matter, the Court agrees with the defendants that Counts Two and Three of the plaintiff's complaint should be stricken as redundant pursuant to Rule 12(f).  As the defendants accurately state, these claims "are verbatim recitations of Count One," compare Compl. at 30–31 (reciting Count One of the complaint) with id. at 31–32 (repeating the exact same language in Count Two of the complaint) and id. at 33–34 (repeating the exact same language in Count Three of the complaint), and thus constitutes "a needless repetition of other averments in a pleading" subject to striking under Rule 12(f), Cobell v. Norton, 224 F.R.D. 1, 3 (D.D.C. 2004).  Further, under the plain language of Title VII, only the "head" of a department or agency may be sued, and only in his official capacity, 42 U.S.C. § 2000e-16(c); see also Jarrell v. U.S. Postal Serv., 753 F.2d 1088, 1091 (D.C. Cir. 1985) ("[T]he head of the agency is the only proper defendant in a Title VII action . . . ."), a position the plaintiff does not contest, see Pl.'s Opp'n at 11 (stating only that, with respect to this issue, "[the p]laintiff seeks to proceed as the Court deems legal in this civil action").  The Court will therefore dismiss all of the defendants named in the plaintiff's complaint other than Secretary Chu.

That leaves the defendants' motion to dismiss the balance of the plaintiff's complaint under Rules 12(b)(1) and 12(b)(6) on the ground that the plaintiff's lawsuit is untimely.  Defs.' Mem. at 7–10.  This Court has previously explained that a governmental defendant's reliance on a federal statute of limitations is an affirmative defense that, unless explicitly stated otherwise in

---

[2] In addition to the plaintiff's complaint and the defendants' motion to dismiss, the Court considered the following documents in reaching its decision: (1) the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss (the "Defs.' Mem."), (2) the Motion Not to Dismiss filed by the plaintiff (the "Pl.'s Opp'n"), and (3) the Reply to Plaintiff's Opposition to Motion to Dismiss (the "Defs.' Reply").

the text of the statute itself, does not implicate the Court's subject-matter jurisdiction. See Smith v. United States, 518 F. Supp. 2d 139, 147–48 (D.D.C. 2007) (Walton, J.) ("Contrary to the government's assertions, '[a] statute of limitations defense . . . is not "jurisdictional"' in nature." (quoting Day v. McDonough, 547 U.S. 198, 205 (2006)); see also Norman v. United States, 467 F.3d 773, 775 (D.C. Cir. 2006) ("[F]ederal statutes of limitations are not jurisdictional."). This Court has also held, albeit in the related context of an exhaustion of administrative remedies defense, that the provision of Title VII containing the statute of limitations at issue here, 42 U.S.C. § 2000e-16(c), does not contain language of the kind necessary to deprive the Court of subject-matter jurisdiction. See Hamilton v. Geithner, 616 F. Supp. 2d 49, 61–62 (D.D.C. 2009) (Walton, J.) (noting that § 2000e-16(c) provides only that a plaintiff "may file a civil action" if the requirements of the statute are met). Thus, the defendants cannot invoke Rule 12(b)(1), which pertains only to dismissals for lack of subject-matter jurisdiction. "Instead, the only possible procedural mechanism for considering [the defendants'] statute of limitations argument at this stage of the proceedings is Rule 12(b)(6)." Smith, 518 F. Supp. 2d at 149.

However, "[i]n determining whether a complaint fails to state a claim" under Rule 12(b)(6), the trial court may consider not only "the facts alleged in the complaint," but also "any documents either attached to or incorporated [by reference] in the complaint and matters [subject to] judicial notice." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). The plaintiff has attached to her complaint the decision from the Equal Employment Opportunity Commission (the "EEOC" or the "Commission") denying her request for reconsideration of the EEOC's denial of her initial appeal of her discrimination complaints. Compl., Ex. 1 (Memorandum Decision of the Equal Employment Opportunity Commission

3

dated February 8, 2007 (the "EEOC Decision")).[3] That decision contains all of the information necessary to adjudicate the merits of the defendants' statute of limitations argument. See id. at 1 (setting forth the date of the EEOC's underlying order denying the plaintiff's appeal from the dismissal of her discrimination complaints and establishing that the plaintiff filed her request for reconsideration in a timely manner). Accordingly, the Court can take judicial notice of the dates established in that order and address the defendants' argument on its merits. See Muhammad v. N.Y.C. Transit Auth., 450 F. Supp. 2d 198, 204–205 (E.D.N.Y. 2006) (holding that "[a] plaintiff's EEOC charge and the agency's determination are both public records, of which this Court may take judicial notice").

This argument may be summarized as follows. Pursuant to § 2000e-16(c) and the agency regulation implementing that statute, 29 C.F.R. § 1614.407,[4] a plaintiff must file a complaint arising from a denial of a claim before the EEOC "within [ninety] days of receipt of notice of

---

[3] The decision was actually written by the Office of Federal Operations on behalf of the EEOC. See 29 C.F.R. § 1614.405(a) ("The Office of Federal Operations, on behalf of the Commission, shall issue a written decision setting forth its reasons for the decision."). For ease of reference, the Court will simply refer to the author of the opinion as the EEOC, as the Office of Federal Operations is merely acting on the EEOC's behalf in composing the written decisions of the agency.

[4] Section 1614.407 states:

> A complainant who has filed an individual complaint, an agent who has filed a class complaint[,] or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized under [T]itle VII, the ADEA[,] and the Rehabilitation Act to file a civil action in an appropriate United States District Court:
>
> (a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed;
>
> (b) After 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken;
>
> (c) Within 90 days of receipt of the Commission's final decision on an appeal; or
>
> (d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

29 C.F.R. § 1614.407 (2006).

final action taken by . . . the [EEOC]." Defs.' Mem. at 8. According to the defendants, the EEOC took "final action" with respect to the plaintiff's complaints when it denied her appeal on April 5, 2006. Id. at 9. Yet, the plaintiff did not file her complaint in this Court until May 14, 2007, well after the ninety-day statute of limitations. Id. Therefore, the plaintiff's complaint is, from the defendants' perspective, untimely and must be dismissed. Id.

The plaintiff disputes this proposition in only one respect. She argues that the relevant date from which the statute of limitations began to run was not the date on which the EEOC denied her appeal, but rather the date on which she received notice of the agency's denial of her request for reconsideration. Pl.'s Opp'n at 11. That date—February 14, 2007—is less than ninety days prior to the date on which the plaintiff filed her complaint. The plaintiff argues in the alternative that even if her filing was "technically late," the statute of limitations "should be equitably tolled" from the date of the denial of her appeal until the date on which she was notified of the EEOC's denial of her request for reconsideration. Id.

The defendants counter that the plaintiff's reading of § 2000e-16(c) is inconsistent with 29 C.F.R. § 1614.405(b), the agency regulation interpreting the term "final action" for purposes of § 1614.407. Section 1614.405(b) states:

> A decision issued under paragraph (a) of this section is final within the meaning of § 1614.407 unless the Commission reconsiders the case. A party may request reconsideration within 30 days of receipt of a decision of the Commission, which the Commission in its discretion may grant, if the party demonstrates that:
>
> > (1) The appellate decision involved a clearly erroneous interpretation of material fact or law; or
> >
> > (2) The decision will have a substantial impact on the policies, practices[,] or operations of the agency.

29 C.F.R. § 1614.405(b) (2006).  The defendants interpret this regulation to mean that "a decision by the EEOC is final . . . unless the EEOC grants a motion for reconsideration," Defs.' Reply at 4 (emphasis in original), which the EEOC did not do in this case, see EEOC Decision at 2–3 ("After reconsidering the previous decision and the entire record, the Commission finds that the requests fail to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the requests.").

The Court's resolution of this dispute is guided in large part by the District of Columbia Circuit's ruling in Nordell v. Heckler, 749 F.2d 47 (D.C. Cir. 1984).  That case, like this one, "concern[ed] the filing deadline for Title VII suits brought against the government."  Id. at 48.  The plaintiff, "Karen Nordell, filed her suit against the Secretary of Health and Human Services more than eight months after the EEOC rejected several of her claims, but within thirty days following the EEOC's denial of her [timely] request for reconsideration."  Id.  A former member of this Court "dismissed Nordell's suit as untimely."  Id.

On appeal from that ruling, the circuit court considered "whether [Nordell's] request for reconsideration rendered the EEOC's initial decision no longer 'final' for purposes of the statutory filing deadline."  Id.  After establishing that "Congress intended to honor the internal rules established by individual administrative agencies regarding when their decisions become final," the court examined the relevant agency regulation then in effect, 29 C.F.R. § 1613.235, and the notice appended to the EEOC's initial decision denying Nordell's appeal to determine whether the agency had "publicly articulated" a position on the effect of a request for reconsideration for purposes of finality to which "[d]eference [would be] due."  Id.  Finding § 1613.235 silent on this point and the notice provided by the EEOC ambiguous, the court held that "the most sensible view is that a request for reconsideration of an EEOC opinion, if filed

within the time for bringing suit under Title VII, renders the initial decision no longer 'final action,'" thereby "extend[ing] the deadline for filing a civil action until thirty days following final disposition of the request." Id.

The court justified this conclusion in three ways. First, it observed that interpreting the term "final action" in this manner was "consistent with 'the general notion that an administrative order is not "final," <u>for the purposes of judicial review</u>, until outstanding petitions for reconsideration have been disposed of.'" Id. (quoting Civil Aeronautics Bd. v. Delta Air Lines, Inc., 367 U.S. 316, 326 (1961)) (emphasis in original). Second, the court reasoned that adopting this interpretation "[would] promote judicial economy by encouraging employees to exhaust their administrative remedies before filing suit" because, if the phrase was interpreted differently, "the only safe course for aggrieved employees [would be] to file suit in court without ever bothering to seek reconsideration, with the result that the EEOC [would be] deprived of the opportunity to reexamine its decisions," forcing courts to "have to consider [at least some] lawsuits [that] . . . might have been adjusted administratively." Id. at 49. Finally, this approach "accord[ed]," in the court's view, with its prior "recognition" that "because Title VII is remedial legislation dependent on its enforcement on laymen, [courts] must seek in every case an interpretation animated by the broad humanitarian and remedial purposes underlying the federal proscription of employment discrimination," and that "resort to technicalities to foreclose recourse to administrative or judicial processes is [therefore] particularly inappropriate." Id. (internal citation and quotation marks omitted).

Section 2000e-16(c) has not changed since the circuit court's ruling in Nordell, so the court's decision "to honor the internal rules established by individual administrative agencies regarding when their decisions become final" remains binding on this Court. Id. at 48.

However, the EEOC regulation interpreting that statute has changed in the years following the circuit court's decision. Whereas the regulation in effect at the time of Nordell "[did] not address the effect a request for reconsideration has on the finality of the initial decision," id., § 1613.405(b) provides that a decision by the EEOC on a complainant's appeal "is final . . . unless the Commission reconsiders the case." The question therefore becomes whether the phrase "reconsiders the case" means that the EEOC must grant a motion for reconsideration to extend the filing deadline set forth in 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407, as the defendants suggest, Defs.' Reply at 4, or rather means only that the EEOC must be reviewing a request for reconsideration filed by a complainant for the deadline to be extended.

The few courts that have addressed this specific question disagree with each other. In Conkle v. Potter, 352 F.3d 1333 (10th Cir. 2003), the Tenth Circuit relied upon precedent from the Third Circuit interpreting a prior version of § 1613.405(b) to hold that "'a federal employee's timely filed request for reconsideration tolls the 90-day deadline for filing suit in federal court,'" id. at 1336 (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 246 (3d Cir. 1999)). While it acknowledged that "the Third Circuit was addressing the version of § 1614.405(b) that was enacted in 1992," the Tenth Circuit found that "the 1992 version of the regulation [did] not differ in any material respect from the 1999 version." Id. at 1336 n.6. The court therefore concluded that "the 90-day period in which [the plaintiff in that case] could file her civil suit began to accrue when she received the denial of her request for reconsideration from the EEOC." Id. at 1336.

The United States District Court for the Eastern District of Virginia reached the opposite result in Cochran v. Gonzales, No. 1:06CV1328, 2007 WL 2005623 (E.D. Va. July 5, 2007). Faced with the identical issue of "whether a request for reconsideration of a final agency

8

decision defeats that decision's finality, thereby postponing the ninety-day time limit to initiate a civil action in federal district court," id. at *1, that court found the difference between the current and prior versions of § 1614.405(b) crucial to its understanding of the current version of the regulation, id. at *1–2. Specifically, the district court compared the language of the prior version of the regulation, which provided that "a decision . . . is final . . . unless[, inter alia,] . . . [e]ither party files a timely request for reconsideration," 29 C.F.R. § 1614.405(b) (1998), with the language of the current version, which provides that "[a] decision is final . . . unless the Commission reconsiders the case," 29 C.F.R. § 1614.405(b) (2006), and concluded on the basis of the different language employed in the two versions of the regulation that, whereas under the prior version of the regulation, "if a party wished to postpone the finality of a decision, all that was required was a request for reconsideration[,] . . . the EEOC's new regulation makes clear that finality is not defeated unless the Commission actually reconsiders the case." Cochran, 2007 WL 2005623 at *2 (emphasis in original).

The court in Cochran also relied upon the EEOC's explanation for its amendment of § 1614.405(b) as support for its conclusion. Id. That explanation provides:

> Reconsideration is an extra layer of review that is duplicative and time-consuming[,] but that does little to improve the complaints process. The Commission denies the majority of requests for reconsideration, whether in procedural or merits cases. The purpose of this change is to enable the Commission to direct more resources to [decisionmaking] at the first appellate level. . . . [This change] will provide the resources to improve the timeliness and quality of the Commission's Office of Federal Operations decisions across the board. The broad availability of reconsideration has not significantly enhanced the overall decision-making process. Many requests are simply a reargument of previously unsuccessful positions. They are sometimes used only to delay the finality of an adverse decision. The overwhelming majority of requests are denied. . . . To the extent agencies have legitimate complaints about erroneous Office of Federal Operations decisions, the Commission believes the principal

9

> remedy is to seek to improve the quality[,] timeliness[,] and consistency of the [decisionmaking] process as a whole. This is best accomplished by shifting resources to the appeal stage.

Federal Sector Equal Employment Opportunity, 63 Fed. Reg. 8594, 8601–02 (Feb. 20, 1998). From this language, the district court in Cochran concluded that "the Commission changed the regulation to shift resources away from the reconsideration stage to the initial appeal." Cochran, 2007 WL 2005623 at *3. Thus, considering what it found to be "the EEOC's unambiguous intent in amending § 1614.405," the district court in Cochran concluded that "a request for reconsideration does not postpone the decision's finality, unless such a request is granted." Id.

If the Court were construing § 1614.405(b) in the abstract, it might be inclined to agree with the district court in Cochran that the regulation should be read as requiring that a request for reconsideration be granted for the finality of the EEOC's initial appellate ruling to be, in the words of the Cochran court, "defeated." Id. at *2. "The rules of statutory construction apply when interpreting an agency regulation," Roberto v. Dep't of Navy, 440 F.3d 1341, 1350 (Fed. Cir. 2006), and the District of Columbia Circuit has made clear that "where the words of a later statute differ from those of a previous one on the same or related subject, the Congress [(or, in this case, the EEOC)] must have intended them to have a different meaning," United States v. Wilson, 290 F.3d 347, 360 (D.C. Cir. 2002) (internal citation and quotation marks omitted). But see United States v. Dickerson, 310 U.S. 554, 561 (1940) (noting that this "inference is a workable rule of construction, not an infallible guide to legislative intent"). Thus, it is plausible to infer from the deletion of any reference to "a timely request for reconsideration" in the amended version of § 1614.405(b) that the EEOC intended to alter its interpretation of the term "final decision" to include appellate decisions for which a request for reconsideration is pending but has not been granted.

But this Court's reading of § 1614.405(b) does not take place in a vacuum. The District of Columbia Circuit has already determined which considerations should guide the Court's understanding of the regulation assuming the position of the EEOC is unclear. Nordell, 749 F.2d at 48–49. Those considerations, if applicable, lead to an interpretation of the regulation contrary to that advanced in Cochran. Id. Thus, the salient question for this Court is not how it would interpret § 1614.405(b) left to its own devices, but rather whether the regulation is so ambiguous that the reasoning of Nordell still controls.

And the regulation is ambiguous. Even the district court in Cochran conceded that ascribing the term "reconsider" its "casual usage" would mean that a request for reconsideration would "postpone finality" because "the Commission [would have to] 'reconsider' a case (in the colloquial sense) when deciding whether to grant a request for reconsideration." Cochran, 2007 WL 2005623, at *2. Indeed, in its decision denying the plaintiff's request for reconsideration, the EEOC states that it "reconsider[ed] [its] previous decision and the entire record," EEOC Decision at 2, suggesting that the "colloquial sense" of the term is "casual[ly] us[ed]" by more than just the complainants seeking relief under the regulation, Cochran, 2007 WL 2005623, at *2.

Nor is the EEOC's commentary on the amendment to the regulation as convincing as the court in Cochran suggests. While the EEOC notes in its explanation for the amendment to § 1614.405(b) that requests for reconsideration "are sometimes used only to delay the finality of an adverse decision," Federal Sector Equal Employment Opportunity, 63 Fed. Reg. at 8601, it is readily apparent that the agency's concern with this practice is that it prevents the EEOC from committing agency resources and attention to "the initial appellate decision," not that it permits complainants to extend the deadline to file their appeals in federal district court in some

11

untoward manner. Id. The EEOC endeavored to ameliorate that problem by "provid[ing] standards for parties to meet in seeking reconsideration," which would make it easier for the EEOC to deny such requests without an extended analysis. Id. Read in proper context, neither the language of the amended regulation nor the explanation behind it compel or even necessarily suggest the result reached by the district court in Cochran.

Without any clear guidance from the EEOC as to what the agency intended when it re-wrote § 1614.405(b) to provide that an appellate decision "is final . . . unless the Commission reconsiders the case," the Court is bound by the rationale of Nordell to construe this language as meaning that a request for reconsideration deprives the agency's ruling of finality for purposes of appeal to this Court. If anything, it would be even more "inappropriate" to "resort to technicalities" in interpreting the most recent version of the regulation, as the district court did in Cochran, than it did to indulge in such practices under the regulation at issue in Nordell given that the "laymen" upon whom "Title VII is . . . dependent" would be particularly ill-suited to recognize the difference between the EEOC's consideration of a complainant's request for reconsideration, which necessarily occurs whenever such a request is filed, and the agency's decision to formally reconsider a prior opinion in response to a complainant's request, which will only occur at the discretion of the agency. Nordell, 749 F.2d at 49 (internal citation and quotation marks omitted). Moreover, under such an approach, "employees may well abandon the reconsideration route altogether" because "[i]f an employee waits [to initiate] court action until after the EEOC's decision on reconsideration, the action will be held untimely if [ninety] days have elapsed since the original decision." Id. "Thus, the only safe course for aggrieved employees [would be] to file suit in court without ever bothering to seek reconsideration, with the result that the EEOC [would] be deprived of the opportunity to reexamine its decisions"

12

while "courts would have to consider lawsuits[,] some of which . . . might have been adjusted administratively." Id.

The Court therefore interprets § 1614.405(b) to mean that an EEOC decision is final only if a request for reconsideration is not filed by the complainant. Where a timely request for reconsideration is made, 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407 require only that the complainant file his complaint in this Court within ninety days of the denial of the request. The plaintiff's complaint having been filed within ninety days of receipt of the EEOC decision denying her request for reconsideration, the Court concludes that the complaint is timely and must therefore deny the balance of the defendants' motion.

**SO ORDERED** this 13th day of August, 2009.[5]

REGGIE B. WALTON
United States District Judge

---

[5] An order will be entered contemporaneously with this memorandum opinion (1) granting in part and denying in part the defendants' motion, (2) dismissing all of the defendants other than Secretary Chu as defendants in the case, (3) dismissing Counts Two and Three of the plaintiff's complaint in their entirety, and (4) directing Secretary Chu to file his answer or, if permissible, any responsive motion to the plaintiff's complaint within ten days of the entry of the order pursuant to Federal Rule of Civil Procedure 12(a)(4)(A).